T. J. PORTWOOD VS. BOARD OF SUPERVISORS OF MONT-
GOMERY COUNTY.

1. NEW COUNTIES: *Power of legislature in respect thereto. Section 30, art. 4, Constitution.*
The constitution gives to the legislature power to create new counties and to alter the boundaries of existing ones. Without an express grant of power by the constitution it would have been competent for the legislature to create new counties. This power implies the right to do all things necessary to the accomplishment of that object. It is not exhausted by defining the boundaries, locating the seat of justice, etc. The legislature may require the new county to assume or pay a just proportion of the debt of the county from which it derives its territory. The constitutional provision has no other effect than to limit the legislative discretion as to the area of new counties.

2. MANDAMUS: *Creditor of county.*
The relator in an action of mandamus must show that mandamus is the only adequate and complete remedy to maintain that suit. Hence a party having a claim against a county, which is rejected by the board of supervisors, must either appeal from the order of the board refusing to allow the claim to the circuit court, or he must sue the county in the circuit court and obtain judgment upon his claim, before he can maintain on action of mandamus against the county.

ERROR to Circuit Court of *Montgomery* County.

Hon. ORLANDO DAVIS, Judge.

All the facts necessary to a full understanding of the prin-ciples announced are found in the opinion of the court.

The errors assigned are:

1. The court erred in sustaining the demurrer of respondents to the alternate writ.

2. The court erred in dismissing relator's petition and alternate writ.

*Harris & George,* for plaintiff in error :

The act in question must be construed together with the act creating the county of Montgomery, for it is a settled rule of construction that all acts *in pari materia* are to be construed together, and a harmonious interpretation adopted, though the former may not be referred to in the latter. Grand Gulf Bank *v.* Archer, 8 S. & M., 151; Scott *v.* Searles, 5 ib., 25; the act creating Montgomery county (Acts 1871, p. 589); act in question (Acts 1872, p. 405). There can be no doubt of the power of the legislature to create new counties and change ·county boundaries. Const. Miss., art. 4, § 37. And this power carries with it the further power to apportion debts, if any exist.

This authority in the legislature is supreme, and without limitation, unless such limitation be found in the constitution. Such legislation is not unconstitutional as being retrospective in its action, or as taking away vested rights, or impairing the ·obligation of contracts, or violating the principles of taxation. Dillon on Mun. Corp., p. 79. The legislature had the power to direct the application of these funds, as provided in the act. This power, when exercised by the passage of a law, is an ·expression of the legislative discretion, and over this, no matter how onerous the law,· the courts will not assume control and attempt to interfere. The courts of New York go still further. See 18 N. Y., 155; 23 ib., 318. As to legislative power of corporation funds, see Dillon on Mun. Corp., ·93–80; 34 Mo., 546; County *v.* State, 11 Ill., 202; County *v.* County, 12 ib., 1; Dennis *v.* Maynard, 15 ib., 477. The relator has complied with the act in question in every particular, and mandamus is the proper remedy to enforce his claim .against the county. Grant *v.* Board Police, 9 S. & M., 77;

Carroll *v.* Board Police, 28 Miss., 38; Beaman *v.* Leake County, 42 ib., 238.

It will certainly not be doubted that the relator has brought himself strictly within the rule laid down in these cases.

*G. E. Harris*, Attorney General, and *Charles S. McKenzie*, for defendants in error:

The demurrer was properly sustained. It was evidently the intention of the legislature that relator should be paid out of money paid over to the treasurer of Montgomery county by the treasury of Choctaw county, and if the money had been so paid relator should have stated that fact in his petition and writ. See Moses on Mand., 19 ; 25 Me., 333 ; 27 Penn. St., 277 ; Moses on Mand., 206 ; 10 Wend., 25.

The act gives the board power to approve or disapprove,. and the board has discretion in the matter. See Code, 1871, § 1521. Mandamus cannot control this discretion. See, also, Moses on Mand., 104, 120 ; 19 Johns., 259 ; 18 ib., 242 ; 7 Cow., 363 ; 3 Mich., 475 ; 9 S. & M., 77 ; 44 Miss., 383 ; 40 ib., 268 ; 42 ib., 242 ; 50 ib., 638.

Upon the face of the petition the relator is not entitled to the relief by mandamus.

See Code, 1871, §§ 2012, 2013 ; Moses on Mand., 19, 58, 88, 89, 123, 205 ; 37 Penn. St., 277 ; 5 Jones L. (N. C.), 265 ; 6 Binn., 5 ; 14 Ind., 433.

As a conclusion of the whole matter, the relator cannot resort to *extraordinary* remedy by *mandamus* when he has a clear *ordinary* legal remedy.

Relator had two clear, full, and complete ordinary legal remedies, given by the Code of 1871, §§ 1383, 1384.

Simrall, C. J., delivered the opinion of the court.

Portwood, the relator, was teacher of a public school in the year 1871, in that portion of the county of Choctaw which was cut off from it and constituted a part of the county of Montgomery, organized under the act of May 13, 1871.

The 6th section of this act requires the new county of Montgomery to pay its proportion of the county debt of Choctaw, to be ascertained from the assessed value of the taxable property of Choctaw county.

By the subsequent act of March 22, 1872, the treasurer of Choctaw county is directed to pay over to the treasurer of Montgomery county all moneys collected on account of the public schools, for the year 1871, from that territory which was cut off from Choctaw county to form Montgomery county, which has not already been paid to teachers of that section; and the treasurer of Montgomery county is required to pay warrants issued by the authorities of Choctaw county for services in the district taken off from it.

Warrants issued since the creation of Montgomery county, by the school directors of Choctaw county, to teachers teaching in the district which was excised, are required to be presented to the clerk of the board of school directors of Choctaw county, to be by him retained and filed, and in lieu thereof he shall issue a certificate, which shall be presented to the clerk of the board of school directors, who shall, with the approval of said board, issue in lieu thereof a warrant for the amount.

The relator says that the school trustees issued warrants of date the 8th of August, which, under this act, he gave up to their clerk, and received a certificate, which he had presented to the clerk of the school trustees of Montgomery, and also application to the trustees for its approval. The trustees held this under advisement, without final decision, until the board of trustees was abolished by the act of April 17, 1873, and all of its duties and powers were devolved on the board of supervisors.

On the 7th of October, 1873, the certificate was presented to the board of supervisors; he presented his certificate to that board for approval and a warrant on the county treasurer.

This application was under the act of March 22, 1872. This was refused.

On these facts the relator prayed for the writ of mandamus to compel the board of supervisors to pass an order to approve the certificate and to issue to him a warrant.

On this petition the alternative writ was issued and served, to which the respondents demurred.

The object intended to be accomplished by the act of 1872 was to give to the county of Montgomery the benefit of all taxes collected for schools in that portion of Choctaw which was made part of the territory of Montgomery, and that all the debts incurred to teachers in the excised territory, evidenced by certificates, since the creation of Montgomery county, should be paid by that county.

The relator alleges that he rendered the service, has obtained the certificate of the proper authority in Choctaw county, and had submitted his claim to the school trustees of Montgomery for approval, but before they came to any definite conclusion their offices were abolished. He then laid it before the board of supervisors, who rejected it; for what reason we are not informed.

The relator has conformed to the act of 1872 in every respect. There has been no default on his part. His final application was to the successors of the school trustees, and it is not questioned that he has applied to the proper authority, unless some of the objections taken to the act of 1872 are fatal to it.

The 1st assignment of cause of demurrer is that the act is obnoxious to two constitutional provisions, viz.: 1st. No state shall pass any *ex post facto* law, or law impairing the obligation of contracts. 2d. Private property shall not be taken for public use, except on compensation first made, etc.

The constitution enables the legislature to create new counties and alter the boundaries of existing ones. New counties cannot be created except by subtracting territory from others. The power implies a right to do all those things necessary and proper to the accomplishment of the principal object. The power has not been exhausted by defining the boundaries and

the location of a seat of justice; provision must be made for its civil organization and filling its several offices. Nor may it stop here. If the territory has been taken from counties burdened with debt, in the form of bonds or otherwise, legislative duty would not have been completely performed unless the new county was required to assume or pay a just proportion of the debt of the county from which it has derived territory. The adjustment ought to be made on the basis of the tax-producing resources of the property and population excised, compared with the property and population of the entire county. Without an express grant of power in the constitution it would have been entirely competent for the legislature to form new counties and alter the boundaries of others at its pleasure. The section in the constitution on this subject really has no other effect, practically, than to limit the legislative discretion as to the area of new counties.

The acts of 1871 and 1872 might well be vindicated on the single ground of the right of the legislature to create new counties and, as incident to that, do all those things which equity and justice demand in making, as far as may be, an equal distribution of the debts of those counties from whom taxable property and population have been taken, by a transfer of a just part to the new county. In making such apportionment nothing more is attainable than approximate equality.

It is hardly the province of a court to review the calculation with a view of determining whether the equality has been reached. That subject more appropriately belongs to the legislative department.

These principles, in themselves so reasonable and just, have had frequent recognition.

Thus, in People v. Alameda County, 26 Cal., 646, one Gilman had built a bridge in 1852 by contract with Contra Costa county.

The next year the county of Alameda was created, in part out of the territory of Contra Costa. In 1858 the legislature passed an act appointing commissioners to adjust the amounts

to be paid by Alameda to Contra Costa, as her portion of the debt before her territory was divided.

The commissioners fixed the sum at $3,944.66. This did not include interest on the debt. By subsequent act passed in 1862, reciting all the anterior proceedings, other commissioners were appointed, who reported the sum due at over $11,000. The court sustained this legislation. In Iowa County v. Green County, 1 Wis., 519 (by Pinney), two counties were made out of what constituted Iowa county, and the county of Green (the new county) was required to pay a just proportion of the debts of the old county. It was rather taken for granted than reasoned out that the legislation was proper. To the same effect is State ex rel. St. Louis Police Commissioners v. St. Louis County, 34 Mo., 569.

The authorities to which we have been referred by the counsel for the plaintiff in error go to the point that the legislature did not exceed or abuse its power in the adjustment which it made of the indebtedness to school teachers for services rendered in the ceded territory. No objection is made to the statute for that reason.

But has the relator shown that mandamus is the only complete and adequate remedy for him? The petition and alternative writ contain the allegation that he presented his claim to the board of supervisors, who rejected it. As we have held at this term, the relator had two remedies open to him. He might have embodied all the evidence in a bill of exceptions and have appealed to the circuit court, or he might have brought an original suit in the circuit court. Lawrence County v. City of Brookhaven (MSS.). The board of supervisors took the claim into consideration and acted upon it. That was all that they could have been compelled to do by mandamus. The court would not have gone further, and dictated what should be the judgment.

The relator, according to his statement of his claim, had a meritorious demand against the county of Montgomery. But to get payment it must be approved by the board of super-

34

visors and a warrant issue therefor. If it be rejected he must establish it by judgment, either on appeal or by original suit.

The real object sought by this proceeding was to review and reverse the decision of the board of supervisors. The mandamus suit cannot perform that office. For this reason the demurrer ought to have been sustained.

Judgment is affirmed.