E. A. LINDSLEY ET AL. *v.* BOARD OF SUPERVISORS OF COA-
HOMA COUNTY.

1. CONSTITUTIONAL LAW.   *Division of counties into judicial districts.   Stare de-
cisis.*

    Although the decision of this court in *Alfred* v. *State*, 37 Miss., 296, up-
    holding the act of December 2, 1858, dividing Hinds county into two
    judicial districts, is now deemed unsound, yet, as the constitution of
    1869 was adopted after that decision, and after the passage of another
    similar act, and the constitution of 1890 was adopted after four more
    similar acts for other counties, and these constitutions, with provisions
    as to judicial districts and counties similar to those of the former con-
    stitution of 1832, contain nothing restrictive of such legislation, but
    the latter constitution, by § 250, expressly recognizes such districts, this·
    court will not now overrule *Alfred* v. *State*, or declare such legislation
    unconstitutional.

2. SAME.   *Division of Coahoma county.   Act of 1892.*

    Accordingly, the act of 1892 (Laws, p. 362), entitled "An act to divide the
    county of Coahoma into two circuit and chancery court districts," etc.,
    is constitutional.

3. CONSTITUTION OF 1890, § 260.   *"Boundary of any judicial district."*

    Section 260, constitution of 1890, which declares that the boundary of any
    judicial district *in* a county shall not be changed, unless, at an election
    held for that purpose, two-thirds of those voting assent thereto, does not
    apply to changes in the boundaries of counties.   The words "boundary
    of any judicial district" refer solely to the line *through* a county sepa-
    rating the two judicial districts created within a county by the legisla-
    ture.

FROM the circuit court of Coahoma county.
HON. R. W. WILLIAMSON, Judge.

On February 19, 1892, was approved an act of the legisla-
ture, entitled "An act to divide the county of Coahoma into
two circuit court and chancery court districts."   By this act
it was provided that the county of Coahoma should be divided

by a designated line into two circuit and chancery court districts; that the courts of the first district should be held at the town of Friar's Point, and those of the second district at the town of Clarksdale; that the sheriff, chancery clerk, circuit clerk, and other officers of the county, should exercise the duties of their respective offices in both districts; that the board of supervisors should hold their meetings alternately at Friar's Point and Clarksdale; that the territorial jurisdiction of the circuit and chancery courts within each district should be limited to the district, and that crimes and misdemeanors should be cognizable only in the proper court of the district in which the offense should be committed. By the said act the board of supervisors was authorized immediately to secure a suitable building in the town of Clarksdale for the court-house, and, if necessary, to issue bonds to obtain the necessary funds. The act contains many other provisions to carry out its purpose, the effect of them all being that the districts are made separate and distinct in all matters pertaining to the circuit and chancery courts, and in almost all pertaining to the administration of county affairs.

The board of supervisors of said county, at a special meeting in February, passed an order to carry this act into effect, and made provision to rent a building for a court-room, jail and offices for the sheriff and clerks at Clarksdale. Thereupon, the appellants, who are citizens and tax-payers of Coahoma county, presented to the chancellor of the district in which the county is situated a bill, asking an injunction to restrain the board of supervisors from further proceeding in the matter, but the chancellor refused to grant the injunction. They then asked the circuit judge for a writ of *certiorari* to bring the order of the board of supervisors before the circuit court for review, but this was refused. They then filed this petition in the circuit court at Friar's Point for a writ of prohibition against the board of supervisors, to restrain it from further proceeding to execute the said order, or taking any steps under said act of the legislature, which the peti-

tioners allege is unconstitutional. The board of supervisors appeared and demurred to the petition, and the demurrer was sustained, whereupon the petitioners appealed.

The constitutional and legislative provisions having reference to the questions involved are set out in the opinion of the court. Section 260 of the constitution of 1890, a clause of which is quoted in the opinion, is as follows:

"No new county shall be formed unless a majority of the qualified electors voting in each part of the county or counties proposed to be dismembered and embraced in the new county, shall separately vote therefor; nor shall the boundary of any judicial district in a county be changed, unless, at an election held for that purpose, two-thirds of those voting assent thereto. The elections provided for in this and the section next preceding shall not be held in any county oftener than once in four years. No new county shall contain less than four hundred square miles; nor shall any existing county be reduced below that size."

Other sections of said constitution which are invoked by counsel for the appellants are § 259, which prohibits the removal of the county seat of the county unless it be authorized by two-thirds of the electors of the county voting therefor, etc., and § 271, which gives authority to consolidate existing counties if the majority of the qualified electors vote therefor.

*James R. Chalmers* and *Craft & Craft*, for appellants.

Prior to the constitution of 1890 this legislation might have been constitutional, for the legislature had plenary power to change county seats, or refer the question to the people, or to create two districts in a county, or to create new counties, but, under the present constitution, the act of the legislature is void, (1) because it violates the plain letter of § 260, by changing the boundary of a judicial district in the county; (2) because it attempts to do indirectly what cannot be done directly, namely, to remove one-half of the

county seat from Friar's Point and practically make two counties out of the territory of one, without a vote of the people, as required by § 259. It is apparent from these sections and § 271, which makes a vote of the people necessary to the consolidation of existing counties, that the policy established by this constitution, is to prohibit any kind of dismemberment in counties without the consent of the electors interested. The county is a judicial district, since by this expression is meant the limited or territorial jurisdiction of courts to be held therein. *Smith* v. *State*, 67 Miss., 116; *Price* v. *Anderson*, 65 *Ib.*, 410; 3 Bouvier's Inst., 72.

A county is a government within a government, and its voters must be consulted on all matters pertaining to it. *Daily* v. *Swope*, 47 Miss., 367; 5 Pick., 277.

"A judicial district in a county" is the territorial limit of the jurisdiction of the circuit, chancery and supervisors' courts held therein. The boundary of the county is the boundary of the judicial district.

The constitution provides that circuit and chancery courts shall be held *in* each county, etc. Section 1469, code 1880, provides that a court, to be styled the circuit court of the county of ———, shall be held in each county, etc. It is not the circuit court of the fourth judicial district to be held for the county of Coahoma, but the circuit court *of* the county of Coahoma, held in the county of Coahoma. The fact that the change necessarily changes the jurisdiction over crimes, shows that there is a change of territorial jurisdiction.

Under the act of 1892, Friar's Point is no longer the county seat of Coahoma county. It is still a county seat, but half of its jurisdiction has been taken away.

The line dividing the county divides three justice's districts in the county. This creates inextricable confusion. The schedule of the constitution, which continues the laws repugnant to it, does not apply to correct this, for, under the act of 1888, justice's districts must be the same as those for members of the board of supervisors.

The act is unconstitutional, because it provides for taking prisoners from their vicinage for trial. It denies to the accused the right to be tried by a jury of the county where the offense is committed. This act violates the bill of rights, even as limited in *Alfred* v. *State.* The evasion of the constitution is a violation of it. *Brien* v. *Williamson,* 7 How. (Miss.), 14.

The legislature cannot do indirectly what it cannot accomplish directly. *Fant* v. *Gibbs,* 54 Miss., 396; *People* v. *Marshall,* 12 Ill., 391.

For authorities in analogous cases, see *Gotcher* v. *Burrows,* 9 Humph., 585; *Grundy County* v. *Marion County,* 5 Sneed, 490; 5 Pickle, 277; 26 Pac. Rep., 983.

*Calhoon & Green* and *Rucks Yerger,* for appellee.

*Alfred* v. *The State,* 37 Miss., 296, upheld a statute similar to this, passed under the constitution of 1832. That constitution guaranteed a speedy and fair trial by an impartial jury of the *county* where the offense was committed. The objection to the act for this must be regarded, then, as settled, since these two succeeding constitutions have been passed, neither of which change the policy or show antagonism to the decision in that case.

The constitutions of 1817 and 1832 provide that the legislature shall divide the state into "convenient districts." *Alfred* v. *State* was decided under a constitution which provided "that the state shall be divided into convenient districts." Section 152, constitution 1890, provides for the division of the state "into convenient circuit and chancery court districts." Prior to 1858 the legislature had been doing this by the organization of several counties into districts, but by the act of 1858 it began to divide counties into two judicial districts. By judicial district is meant the districts of a county for the holding of circuit and chancery courts. The county as a whole is never regarded as a judicial district.

The "boundary of a judicial district in a county" must mean the line which separates the two districts. The boundaries of a county are not referred to by § 260 of the constitution of 1890. There may be boundaries of, or for, a county, but there are not boundaries *in* the county. The act in question was not designed to change boundaries. The legislature may divide a county into ten judicial districts, and it might become important to do so, if the population should reach a million.

The views above advanced are the only ones which will harmonize § 152 with § 260. Section 259 has no relevancy here. This act changes no county site. Friar's Point remains a county site. If the making of two judicial districts be the removing of the county site, there is no necessity for § 259, which expressly forbids such removal.

There is nothing in the position that the act practically makes a new county of less than 400 square miles, in violation of § 260. The mere fact of finding this prohibition in the section is, by the whole collocation, conclusive that the framers distinguished this from changing the boundaries of judicial districts. Besides, there is no new county made. It is idle to suppose that § 260 has reference to supervisors' or justices' districts. They have never been regarded as judicial districts.

*Mayes & Harris*, on the same side.

1. The act of 1892 is not obnoxious to § 259 of the constitution of 1890. The effect is to give the county two county seats—not to remove the existing seat to a different town. There is no inherent impossibility in such a thing. Even states have existed with two capital cities. There is no necessary connection between the county seat and the locality of the courts having jurisdiction over the territory of the county. Even when a new county is created out of an old county, the latter retains jurisdiction in the new county until it is attached to some district. *Runge* v. *Wyatt*, 25 Tex., 291 (supplement).

The very meaning of the word "remove" excludes the interpretation contended for by appellant. On this point see *State* v. *McFadden*, 23 Minn., 40.

The act does not violate § 260 of the constitution. In interpreting clauses, we must presume that words have been employed in their natural and ordinary meaning. Cooley, Con. Lim., 73; 130 U. S., 670. Effect must be given to the words "in a county," and this can be done only by construing the clause to refer to judicial districts which are comprised within a county. The word "in" cannot have the signification sought to be attached to it by appellants. It never expresses the relation of coterminousness.

The words "judicial district" in a county must apply to just such districts as this act creates, and cannot apply to a whole county considered as a judicial district.

*T. M. Miller*, attorney-general, on the same side.

If it were a new question in Mississippi, whether an act like this was violative of constitutional provisions, I should say, without hesitation, the right did not exist, but, since the decision in *Alfred* v. *State*, upholding such legislation, we have had two constitutions, neither of which denied this right, or condemned the decision. The question must now be considered as forever at rest. It is obvious, from a reading of our present constitution, that the whole subject of change of county seats, the creation of new counties and the change of boundaries of judicial districts, received the fullest consideration, and the limitations to be imposed were made clear.

In view of legislation on this subject, we must suppose that the convention of 1890 did not mean to prohibit this sort of legislation.

Argued orally by *James R. Chalmers*, for appellants, and by *S. S. Calhoon* and *E. Mayes*, for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

There is a suggestion of incongruity in securing to every one prosecuted "by indictment or information a speedy and

public trial by an impartial jury of the county where the offense was committed," and providing that no county shall have an area less than five hundred and seventy-six square miles, and then upholding an act of the legislature which divided a county into two districts for holding courts, and limited the *venire facias* to a part of the county comprising one of the districts, as was done in *Alfred* v. *State*, 37 Miss., 296. It seems plain that the bill of rights gave the right to a jury, selected as prescribed by law, in the county, without regard to a line drawn through it; and that the prohibition against making any county to contain less than five hundred and seventy-six square miles was for the wise purpose of protecting the tax-payers against the evil of undue multiplication of court-houses and incidental expenses sure to follow. But, in the case mentioned, it was decided that the legislature had the right to divide a county into two districts for holding courts, and to provide that jurors should come alone from that district of the county in which the court is held, and not from the body of the county as a whole. That was the single matter decided in that case, so far as respects the constitution. No other constitutional question was involved or presented. The legislative act involved in the case cited divided Hinds county into two districts for holding circuit and chancery courts, with certain appropriate provisions as to venue in civil and criminal proceedings, grand and petit jurors, process and other matters having relation to the holding of courts in the two districts.

In 1867 a similar act was passed with reference to Chickasaw county. Laws of 1867, p. 647.

In 1873 (Laws, pp. 161, 166) similar acts were passed for Carroll and Yalobusha counties, which acts embraced a provision as to recording certain instruments required by law to be recorded. The act dividing Hinds county into two districts for circuit and chancery courts had been amended, as to recording instruments, in 1871. Laws, p. 759.

In 1874 the act, as to Carroll county, was amended (Laws

1874, p. 81), and the act as to Yalobusha was also amended then (Laws 1874, p. 95); and the act as to Yalobusha was again amended in 1875. Laws 1875, p. 159.

In 1878 there was similar legislation for Panola county (Laws 1878, p. 147), and an act of like nature for Marion county was passed in 1888 (Laws of 1888, p. 74), and it was amended and extended in 1890. Laws of 1890, p. 91.

The acts as to Hinds and Chickasaw counties were passed under the constitution of 1832, which contained the provisions mentioned in the beginning of this opinion.

The acts as to Carroll, Yalobusha, Panola and Marion were passed under the constitution of 1869, which embraced similar provisions to those contained in the constitution of 1832, and before mentioned.

At the time of the adoption of the constitution of 1869, as already stated, there were two counties in each of which there were two districts for holding circuit and chancery courts, and the case cited above, in which the right of the legislature to create these districts was maintained, had been decided; and that constitution contains no new provision restrictive of legislative power on this subject. This is significant, and must be accepted as indicative of acquiescence in the view held in the decision named.

When the constitution of 1890 was adopted, there were six counties, each of which had been divided into two districts for holding circuit and chancery courts, and for other purposes—indeed, for nearly every purpose pertaining to county affairs, except the election of county officers. So that, in the six counties named, the spectacle was presented of practically twelve counties in nearly all but names. While each of the six had one name, and one set of county officers elected by the electors of the county, and was but one for certain purposes, it had two seats of justice, two circuit and chancery courts, two court-houses, two jails, two sets of record-books. In fact, it was double as to nearly every thing that can be called county matters.

All of this came about gradually, step by step, from the seemingly harmless enactment sustained by the decision of *Alfred* v. *The State*. Had the appalling results which have flowed from it been foreseen by the court, it is incredible that it would have made that unfortunate decision; but it was made, and we have the evil results, and had them when the constitution of 1890 was adopted, which contains no word of condemnation or prohibition or restriction of the practice of dividing counties into court districts, but, with the spectacle before the convention, it dealt with the subject, and, while it prohibited the removal of a county seat without the assent of the electors of the county at an election, and prohibited the formation of a new county without the assent of certain electors, and a county less than four hundred square miles in extent, it purposely sanctioned the division of counties into districts for holding courts, and prohibited the disturbance of the dividing line in a county, without the assent of two-thirds of the voters, and guards against too frequent agitation of the subject by prohibiting the recurrence of elections oftener than once in four years in reference to this. The obvious purpose of the clause in § 260 of the constitution, in the words "nor shall the boundary of any judicial district in a county be changed, unless, at an election held for that purpose, two-thirds of those voting assent thereto," was to protect the dividing line, whereby a county is or may be divided into districts for holding circuit and chancery courts, from change, except as provided for. The language is peculiar. The "boundary" is not to be changed, that is, the line drawn in the county, whereby the county is divided into judicial districts, shall not be changed, unless, etc. The provision was in view of the legislation as to the six counties mentioned, each of which had been divided into two districts. "The boundary" is what divides them. It is the boundary of each district in the county. This clause has no reference to the boundaries of a county, but the "boundary of a judicial district in a county." The state has "boundaries." § 3

of the constitution. Each county has boundaries, and each judicial or court district in a county has boundaries, but the constitution has no reference to them, in the clause under consideration, but to "the boundary" which makes the judicial districts in any county—that without which the county would be as was originally intended it should be, viz., one for all purposes pertaining to the county.

It is true that the expression "judicial district" in a county had not been used in the acts creating districts in the six counties for holding courts, and other purposes, but it is not inappropriate; on the contrary, it is quite expressive as descriptive of them, and is not applicable to any thing else in the constitution or to which it refers.

The case of *Alfred* v. *State* was argued and decided with reference to the rights of the prisoner, and not with due regard to the rights and interests of the people. We would not hesitate to overrule and disregard it, were it not for the constitutional history of the state since, from which it appears that the matter must have been before the constitutional convention, with no manifestation of dissent, but, rather, indication of approval, so far as to recognize existing conditions in this respect, and protect the districts in a county from change, without the consent of two-thirds of the voters, and from too frequent trial of the strength of the sentiment in favor of such change. The sole object of the clause of the constitution under consideration is to inhibit change of the "boundary" described. There is no interference by it with the right of the legislature to abrogate the evil of two districts in a county. The inhibition is only of a change of this line by drawing it somewhere else. The right of the legislature to alter the boundaries of counties is in no way affected by this provision, whose purpose and effect are to meet the supposed evil of proposed changes of the line drawn in the county separating the districts in it. The power of the legislature over the whole subject exists as before, except as modified by this provision.

We regret to be driven to the conclusion reached, and would gladly announce the opposite view, if we were at liberty to do it, and thereby correct what we regard as a very great public evil; but in this, as in all other cases, our duty is to declare the law to be not as we could wish it was, but what we find it to be, whatever may be the consequence.

*Affirmed.*