JESSEE HINTON *v.* PERRY COUNTY.

1. COUNTIES. *Injunctions. Dissolution. Damages. Solicitor's fees.*

Solicitors' fees are allowable as damages upon the dissolution of an injunction restraining the board of supervisors of a county from removing a county seat.

2. BOARD OF SUPERVISORS. *Judgments. Collateral attack.*

Defects in the proceedings and judgments of a board of supervisors, not jurisdictional in their nature, are unavailing in a collateral proceeding to defeat the action of the board.

3. SAME. *Limited jurisdiction. What record to show.*

In matters in which the board of supervisors have limited jurisdiction its record must show jurisdictional facts, but need not set out the evidence thereof.

4. SAME. *Fraud. Corruption.*

Any judgment of the board of supervisors may be attacked on the ground of fraud or corruption when seasonably set up and pleaded.

5. LEGISLATURE. *Power. Constitutional laws.*

The legislature has all political power not denied it by the state or national constitution.

6. CONSTITUTION 1890, SEC. 260.    *Laws* 1902, *p* 172.    *Seat of justice of county.    Judicial district.*

Laws 1902, p. 172, providing for an election to determine the question of tne removal of the seat of justice of the first judicial district of Perry county, is not violative of nor affected by Constitution 1890, sec. 260, prohibiting the change of the boundaries of county judicial districts except as therein specified.

7. SAME.    *Constitution* 1890, *sec.* 259.

Constitution 1890, sec. 259, providing that no county seat shall be removed unless authorized by two-thirds of the electors voting therefor, but that where the removal is towards the center of the county it may be made if a majority of the electors voting shall vote therefor, most probably has no application to an act, like Laws 1902, p. 172, providing for an election to determine the question of removal of a seat of justice of one of the judicial districts of a county having two such districts; but, if applicable, it requires a two-thirds vote, unless the removal be towards the center of the district, in which case a majority vote is sufficient.

8. SAME.    *Constitution* 1890, *secs.* 152, 259, 260.    *New counties.    Judicial districts.    County seats.*

The subject of legislative power to create new counties, divide counties into judicial districts, and remove seats of justice of such districts discussed.

FROM the chancery court of, first district, Perry county.

HON. STONE DEAVOURS, Chancellor.

Hinton, appellant, was complainant, and Perry county, appellee, defendant in the court below. From a decree in defendant's favor the complainant appealed to the supreme court.

In February, 1902, the legislature passed an act authorizing the board of supervisors of Perry county to order an election upon the question of removal of the seat of justice from Augusta to some point on the Mobile, Jackson & Kansas City Railroad, providing that the board should make an order submitting the question to the legal voters of the county, upon a petition being filed, asking therefor, signed by two hundred qualified electors of the county. The petition having been filed, the board of supervisors, at the September meeting, 1902, ordered

an election to be held in the county upon the question of the removal of the seat of justice. At the election Augusta and two other towns were placed on the ticket to be voted on for the seat of justice. There was a large majority of the votes cast for the removal of the courthouse, and a town called Augusta Depot received a large majority of the votes as the place to which the county seat should be removed. The election commissioners reported the result of the election to the board of supervisors; reporting that the question of removal had carried, and that Augusta Depot had received a majority of the votes cast for the new courthouse seat. Upon receiving this report the board of supervisors made an order declaring Augusta Depot to be the county seat of the first district of Perry county, and that the court should be held there as soon as the courthouse could be built, and proceeded to raise funds with which to erect there a courthouse and jail. No appeal was taken from this order. In December, 1902, Hinton, the appellant, filed the bill in this case praying for an injunction restraining the board of supervisors from removing the county seat from Augusta to Augusta Depot. A preliminary injunction was granted by the chancellor. The bill alleged that the order of the board of supervisors directing the election to be held was void on its face, because the petition on which it was based was not signed by two hundred qualified electors of Perry county; that the election commissioners, when they declared the result of the election, did not know whether the removal was toward the center of the first judicial district or not, and they could not determine whether the removal had carried until they were informed whether the removal was toward the center of the district; that the board of supervisors had no authority to adjudge that the removal was toward the center, a prerequisite to be ascertained by the election commissioners before declaring the result of the election, and the failure of the commissioners to so ascertain and adjudge before declaring the result of the election was fatal to the right of the supervisors

to order the removal; that the board of supervisors and the election commissioners had no power to determine whether the removal was toward the center of the district or not, because no survey of the district had been made, and there was no way provided by law to ascertain where the center of the district was, and therefore the result of the election could not be determined; that in fact the removal was not toward the center of the county, and the election did not result in favor of the removal; that the board of supervisors and the election commissioners decided that the removal was toward the center of the first judicial district, whereas, under the law, it was necessary that the removal should be toward the center of the county; that Laws 1902, p. 172, ch. 123, under which the election was held, was void and in violation of secs. 259 and 260 of the constitution of 1890. The defendant answered the bill, denying all the material allegations thereof. The answer alleged that the findings of the board of supervisors and the election commissioners were final, unless appealed from to the circuit court, and that no appeal had been taken, and the order of the board of supervisors was *res adjudicata,* and that the chancery court had no jurisdiction. The defendant made a motion to dissolve the injunction. The motion was sustained, the injunction was dissolved, and complainant taxed with the costs and attorney's fees.

*Ellis & Sullivan,* for appellant.

All the orders and judgments of a court of limited and special jurisdiction are void, unless the jurisdiction appears on the face of the record, and nothing is presumed in favor of such jurisdiction, but it must affirmatively appear from the record. Where is the evidence of this investigation and finding of the board to rest? It must rest in the record. The record must recite that the investigation was made and the facts which give jurisdiction, found to exist. This record does not show any investigation or finding from hearing evidence.

The record shows that the board obtained its information from the petition itself. The record distinctly so declares. The very language of the order shows this. 4 Am. & Eng. Ency. Law, 386; *Rhodes* v. *Davis,* 2 Ind., 53; *Johnson* v. *Eureka Co.,* 11 Nev., 28; *Rosenthal* v. *Madison P. R. Co.,* 10 Ind., 359; *Fayette Co.* v. *Chitwood,* 8 Ind., 504; *Plummer* v. *Waterville,* 32 Me., 566; *Byrd* v. *State,* 1 How. (Miss.), 163; *Root* v. *McFerrin,* 37 Miss., 17; *Bolivar Co.* v. *Coleman,* 71 Miss., 832; *Lester* v. *Miller,* 76 Miss., 309; *McCreary* v. *Rhodes,* 63 Miss., 308; *McGee* v. *Beall,* 63 Miss., 455; *Garner* v. *Webster Co.,* 79 Miss., 565; *Craft* v. *DeSoto Co.,* 79 Miss., 618; *State* v. *Morgan,* 79 Miss., 659; *Ferguson* v. *Monroe Co.,* 71 Miss., 524. The board cannot look to the petition alone, or at all, for "the necessary jurisdictional facts."

The bill raises the question that there were not two hundred qualified electors on the petitions. It may be that this question is *res adjudicata* if the record of the board is found sufficient to show the jurisdictional facts, but if it is not *res adjudicata* and we are permitted to go behind the record, then we submit that the competent evidence shows that there were not two hundred qualified electors on the petitions. Under this view the chancellor erred in overruling the exceptions of complainant to defendant's amended answer.

It was never legally and properly determined that the election had resulted in favor of removal of the county seat to Augusta Depot; the board of supervisors had no authority to order the removal, and their order for removal was illegal and void. The commissioners could not declare that the result of the election was in favor of removal to Augusta Depot until they knew from the proper evidence, and so adjudged in their finding, that Augusta Depot was nearer the center of the district (county) than Augusta, because if it was not nearer the center of the district (county) it would require two-thirds of all the qualified electors in the county, voting therefor, to carry the election.

Passing over the other points raised by the bill, without intending to waive anything therein alleged, we come to the allegation in the last amendment to the bill, in which it is charged that ch. 123, Laws 1902, under which the election was held, is in violation of secs. 259 and 260 of the constitution of 1890. A casual reading of this law will show that it was written for the purpose of forcing the removal of the county seat from Augusta, where it has been since the county was created. It will be noticed (1) that the law separates removal from the place or places competing for the new location, and the voter shall vote for "Removal" or "No removal," and at the same time he may designate the point to which he wishes removal. The object in this plan of separation was to induce the electors to vote for removal by inspiring the hope that the several places competing for the location would have a chance to get the prize. It did not leave the voters free to decide that the county seat should be left at the old place or removed to a designated place. In other words, it was not a choice between Augusta and Augusta Depot, for instance, but it was a choice between Augusta and as many other places as the board of supervisors might see proper to put in nomination. (2) If "removal" carries, but no place receives the votes necessary to a choice under sec. 259 of the constitution, then the board of supervisors shall order another election and give ten days notice for the purpose of determining the point of location only, and if no place receives the necessary vote, the board shall continue to order elections until some place is selected. The purpose seems to be to get the county seat cut loose from its old location, like an inflated balloon when the lines are detached, and while it is soaring in the elements with no place to alight, to force upon the people every ten days, without peace or rest, an election, until they choose an alighting place, and then the county seat, which was "removed" some time before, and which had been wandering, no one knows where, shall be drawn by some invisible power to the place selected and shall peacefully

settle down upon it.   Under this law the county seat could be
removed and never be relocated, notwithstanding an election to
locate a place might be held every ten days to the end of time.
But as this law contemplated forcing a removal, it is probable
that the board of supervisors would continue to inflict the
people with elections, until in their despair they would choose
a place.   In the meantime where would the courthouse be?
It was removed some time ago.   If the board of supervisors
should continue to bombard the people with elections every ten
days for two or three years before they could be made to select
a place, after removal had carried, where would the county seat
be while this war by election was being waged?   It could not
be at Augusta, because it was removed.   But it may be said
that removal is not effectual until the place is selected.   We
think this is true; and, therefore, place and removal cannot be
separated so that one could carry and the other fail.   The
election on the place is the election and cannot be held but once
in four years in any one county on account of sec. 260, Consti-
tution 1890.   This law, however, makes the election on removal
without reference to place, the election, and does not treat the
numerous elections that it provides for on the place, as elections
at all.   If this law had provided that there should be printed
on the tickets "No removal" and "Removal to ————," the
place or places to be named by the board of supervisors, then
removal and place would have to stand or fall together, and
if no place received the necessary vote, the election would be
over for four years.   Why then did the law not provide a
scheme of this kind?   Manifestly because it was not desirable
to be limited to one election in four years if removal could
not carry by one election.   By separating "removal" from
"place," and making "removal" the election, and getting "re-
moval" carried in the first election, the voting could go on in-
definitely as to place until some place won.

Was there ever a bolder attempt to evade the constitution
than this?   The election prohibited by the constitution oftener

than once in four years is an election that results in leaving
the county seat at the old place or that removes it to a new place.
Under ch. 123, Laws 1902, the election on "removal" alone is
meaningless, and the only real election under this law is the
election on "no removal" and removal to place, and an election
can be held as often as necessary, on giving ten days notice,
until removal to a place carries. If this law should be held
constitutional because "removal" and place were both selected
without having to hold another election, the holding would be
equivalent to saying that the election is constitutional instead
of the law.   Suppose, on the other hand, that "removal" car-
ried, but no place received the necessary majority, and it took
four or five elections to select the place, and these elections were
all held within one year or a shorter time; would not this result,
reached in this way, demonstrate the unconstitutionality of the
law? If the law would be unconstitutional under this result,
why is it not so for all purposes? Surely the result of the elec-
tion, one way or the other, can have no effect upon the consti-
tutionality of the law.

Ch. 123, Acts 1902, violates sec. 259, Constitution 1890,
because it provides that more than one place may be submitted
to be voted upon.   Sec. 259, Constitution 1890, provides that
"when the proposed removal shall be toward the center of the
county," etc., clearly indicating that only one place for removal
should be named. If this scheme of naming only one place was
followed, then removal and place could not be separated, and
no undue influence would be brought to bear on the voters
to induce them to cut the county seat loose from its moorings
and put it adrift, with the hope inspired in the breasts of the
numerous groups who had pet places in nomination, that the
old county seat might float around their way with the proper
amount of pulling and hauling. We submit that under the
constitution only one place for removal could have been pro-
vided for by the law.

*Hartfield & McLaurin,* and *N. C. Hill,* for appellee.

The order of the board of supervisors shows that there were petitions on file asking for the election, signed by more than two hundred qualified electors of the county. This fact was sufficient to give the board jurisdiction, and they need not set out in their order the evidence on which they determined that there were two hundred qualified electors who signed the petitions. *Scott* v. *Porter,* 44 Miss., 364; *Cason* v. *Cason,* 31 Miss., 587.

The orders of the board of supervisors cannot be called in question in a proceeding of this kind, a collateral attack, but can only be done by appeal. *Lemon* v. *Peyton,* 64 Miss., 161.

After a county seat election has been ordered and held, and a sufficient vote is cast in favor of some one place to work a relocation of the county seat, the question on whether the petition presented to the board or county commissioners praying that such an election be held was signed by a sufficient number of voters is not open to judicial investigation when the board has found that it was so signed. So held the supreme court of North Dakota in the case of the *State ex rel. Little* v. *Langlie,* 32 L. R. A., 723, in a case involving the question of the removal of a county seat, and which was in many respects like this case, and to which we call the special attention of the court.

The appellant claims that the board had no right or power to adjudge that the removal was toward the center of the district after the election was held. We submit that it was their duty to do so. How else could that question be determined if not by the board and the election commissioners? Appellant contends that this question could not be determined at all without a survey of the district, and says that no survey had been made. The courts take judicial notice of the United States surveys, and this district was surveyed, as all lands in this state, hence no survey was necessary in order to determine the center of the district.

The appellant contends that the county seat could not be removed toward the center of the first district of Perry county

by a majority vote, but that the removal must be toward the center of the county regardless of districts, to be moved by a majority vote. This contention is manifestly erroneous. It could never have been the intention of the makers of the constitution that this kind of a construction should be placed on sec. 259 of constitution of 1890, when the very next section expressly recognized the right to have two districts in a county. If the contention of appellant is correct, it would be possible, in some instances, to vote the county seat of a district out of the district entirely. This would be unreasonable. The only reasonable construction that can be placed on these two sections of our constitution, when there are two districts in a county, is to construe them to mean the center of the districts.

The result of the election shows that the vote was almost unanimous in favor of the removal, and that a large majority of the voters at the election voted for Augusta Depot, as the convenient place on the Mobile, Jackson & Kansas City Railroad to which the county seat should be removed. We submit that the evidence in this record shows that Augusta Depot, is nearer the center of both the county of Perry and the center of the first district than the old town of Augusta. The act authorizing the vote on the question of removal is not unconstitutional because it authorized separate votes, on the question of removal, and then on the place to which the county seat should be removed. It provided a perfectly fair way to determine the wishes of the voters, on the question of removal and relocation of the county seat. The county seat could never be drifting about in the air like a balloon, as counsel for appellant seems to think, under the provisions of this act.

CALHOON, J., delivered the opinion of the court.

On p. 172, Laws 1902, appears an act (ch. 123) authorizing the board of supervisors of Perry county, on the petition of two hundred qualified electors of the county, to order an election to determine the question of removal of the seat of justice from

Augusta "to some convenient point on the M., J. & K. C. Railroad;" and the act authorized a vote, at the same election, on competing points on that railroad. Accordingly the board ordered the election, and it resulted in nearly a unanimous vote for the removal, and a large majority for the point, Augusta Depot, over all the competitors combined; there being three other points contesting. The act also provides that if no point got a majority over all, and if the question of removal was determined affirmatively, another election should be ordered to determine between the two points receiving the highest number of votes, and the act also authorizes bonds to get money to pay the expenses, etc. It seems that Mr. Hinton was an earnest advocate of removal, and of the point he preferred. No appeal was taken from the action of the board of supervisors; but, after the election and the order of removal, Mr. Hinton filed his bill for, and obtained, an injunction against any further action toward removal. This injunction was dissolved, and $300 allowed as damages as attorney's fees, and he appeals.

We can see no merit whatever in his objection to the allowance of attorney's fees, and many of the grounds on which he bases his right to have the action of the board declared void are valueless, because not jurisdictional, and yet attempted to be availed of in a collateral attack. Actions of the board not involving jurisdictional power are conclusively right in this collateral litigation. Its jurisdiction being, in this matter, limited, the minutes must show that the jurisdictional facts were found to exist. This being done, there is no need ever to set forth the evidence in the judgment, and it is not controvertible, except on direct appeal.

It may be as well to say now that *Simpson County* v. *Buckley,* 81 Miss., 481 (33 South., 650), is a very different case from this. There the bill contained specific charges of fraud, collusion, and corruption, and, of course, any judgment may be attacked on these grounds seasonably set up. In the case before us now there is no pretense of fraud of any sort.

The legislature of the state of Mississippi has all political powers not withheld in her own constitution, or in conflict with the constitution of the United States. Sec. 3, art. 5, of the constitution of 1817 provides that "the state shall be divided into convenient districts, and each district shall contain not less than three nor more than six counties." Sec. 19 of art. 6 provides that no new county shall be created with a less area than 576 square miles. This implies power in the legislature to make new counties within the prescribed area. The constitution of 1832 contains the same provisions, and the same implication follows. Art. 4, sec. 13; art. 7, sec. 17, Neither mentions judicial districts in a county. Under these constitutions the case of *Alfred* v. *State,* 37 Miss., 296, held that the legislature could enact a valid law dividing a county into two judicial districts. It is true that *Lindsley* v. *Coahoma Co.,* 69 Miss., 815 (11 South., 336), said that that decision "is now deemed unsound," though, we assume, not on the line now under discussion; but the court followed it, because the constitutions of 1869 and 1890 had like provisions, and there had been another act, before the last-mentioned constitution, and four other acts after it, without the appearance of anything restrictive of such legislation. So we may safely assume that the decision in *Alfred* v. *State* is as binding as if it had announced correct law, and that the legislature had the unrestricted power to so divide counties into judicial districts. If it had such power then, it has such power now, and also power to change the "seat of justice" of the districts of any county, unless the power is lopped off by the constitution of 1890 under which we now live. This conclusion is irresistible, unless we overrule these decisions and the reasoning on which they are based. *Portwood* v. *Montgomery Co.,* 52 Miss., 523.

Now, Constitution 1890, sec. 152, provides that the state shall be divided into convenient court districts, as the other three constitutions did—*i. e.,* those of 1817 and 1832, and Constitution 1869, art. 6, sec. 13, did. So if there is to be any change of

judicial conclusion, it must be because of sec. 259 or 260 of our present constitution of 1890. Sec. 260 does not apply, for the reason that there is no purpose in the act, or shown in this record, to "change the boundary of any judicial district in a county." *Lindsley* v. *Coahoma Co.,* 69 Miss., 815 (11 South., 336). Perry county has two "seats of justice," and the act under review authorized the board of supervisors to ascertain, and the board tried to see, if the voters wanted one of them changed, and this does not in any way affect the "bound- ary" of the district. Sec. 259 has reference only to removal of the "county seat," while here there is involved only the question of removal of the "seat of justice" of one of the judicial districts of a county. If the section embraced this, and the words "toward the center of the county" applied, it might easily happen that the two courthouses might be side by side, and this view is intolerable. We think the legislature had the power to pass the act of 1902 (*Portwood* v. *Montgomery Co.,* 52 Miss., 523), but think, if this section is pertinent at all in reference to legislative power and the vote, it must be held in the case before us to require a two-thirds vote, unless the removal is toward the center of the district, in which event the majority of those voting is enough. Here it appears by the minutes that the board found that the change was toward the center of the district, and that a majority of the votes were for the removal. In fact, largely over two-thirds of the votes were for removal, and a large majority for Augusta Depot as the point to which removal was wanted, and, in fact, this point happened to be nearer, not only the center of the district, but also nearer the center of the county.

Notwithstanding the section of the bill of rights in the constitutions of 1817 and 1832 providing for the right to "a speedy and public trial by an impartial jury of the county where the offense was committed," the court in *Alfred* v. *State,* 37 Miss., 296, sustained an act not only dividing a county into two judicial districts, for which there was no express warrant in these

constitutions, but providing also that the jurors should be taken, not from the body of the county, but the district of the county in which district the court was to be held. As we have said, this was recalcitrantly followed in *Lindsley* v. *Coahoma Co.,* 69 Miss., 815 (11 South., 336). In *Portwood* v. *Montgomery County,* 52 Miss., 523, it was held that, without express grant, it was competent for the legislature to create new counties. So, we say, it follows that the legislature may not only create a new county, subject to the prescribed area and the other constitutional restrictions, but may also divide one into districts, subject to the constitutional provisions, and may, there being no restriction in the organic law, authorize, as here, a change of the "seat of justice" of any district of a county, where the change does not affect the boundaries of the district affected. In the case before us, it has done so in the act of 1902, on terms prescribed by that act. Those terms are set forth in the act, and those terms constitute the jurisdictional prerequisites, and the orders of the board show they were complied with, and they are conclusively true on collateral attack.

*Affirmed.*