[No. 8146.   *En Banc.*   August 3, 1909.]

THE STATE OF WASHINGTON, *on the Relation of R. F. Lytle et al., Plaintiff,* v. SUPERIOR COURT FOR CHEHALIS COUNTY *et al., Respondents.*[1]

COURTS—ESTABLISHMENT—COUNTIES—DIVISION INTO JUDICIAL DISTRICTS—CONSTITUTIONAL LAW.   Const. art. 4, § 5, providing that there shall be in each county of the state a superior court, with one or more judges thereof, provides for but one court in a county, and is violated by Laws 1909, p. 82, providing that the county commissioners may divide a county into independent judicial districts, each of which is a judicial unit, with its own seal, officers, records, and with jurisdictions restricted to the limits of the district, from which jurors are drawn and changes of venue granted or received, and a distinctive style of actions and proceedings is employed, and providing that in criminal actions, each district shall be considered as a separate constitutional county.

SAME.   Laws 1909, p. 82, providing that the county commissioners, "whenever they determine it to be for the best interests of the people," may divide a county into judicial districts each of which is constituted a "separate and distinct constitutional county" for the purposes of the act, contravenes Const., art. 11, § 3, which provides that a new county shall not be formed containing less than 2,000 inhabitants.

SAME.   Said act contravenes Const., art. 4, § 6, which confers upon superior courts jurisdiction of all certain enumerated actions and proceedings arising in their respective counties.

Application filed in the supreme court June 12, 1909, for a writ of prohibition to prevent the superior court for Che-

[1]Reported in 103 Pac. 464.

halis county, Irwin, J., from approving or acting upon the division of Chehalis county into judicial districts, under Laws 1909, p. 82.   Granted.

*W. H. Abel, Morgan & Brewer, Chas. W. Smith,* and *E. A. Philbrick,* for relators, contended, among other things, that the legislature has no right to limit the constitutional jurisdiction of the court. *State ex rel. Amsterdamsch Trustees Kantoor v. Superior Court,* 15 Wash. 668, 47 Pac. 31, 55 Am. St. 907, 37 L. R. A. 111; *In re Waugh,* 32 Wash. 50, 72 Pac. 710; *Popfinger v. Yutte,* 102 N. Y. 38, 6 N. E. 259; *Hutkoff v. Demorest,* 103 N. Y. 377, 8 N. E. 899, 10 N. E. 535; *Flynn v. Central R. Co.,* 142 N. Y. 439, 37 N. E. 514; *Mussen v. Ausable Granite Works,* 18 N. Y. Supp. 267; *Hicks v. Bell,* 3 Cal. 219; *Zander v. Coe,* 5 Cal. 230; *Haight v. Gay,* 8 Cal. 297, 68 Am. Dec. 323; *People ex rel. Busby v. Howland,* 17 App. Div. 165, 45 N. Y. Supp. 347; *Leach v. State,* 36 Tex. Cr. 248, 36 S. W. 471; *State ex rel. Board of Railroad Com'rs v. Wilmington & W. R. Co.,* 122 N. C. 877, 29 S. E. 334; *Parsons v. Tuolumne Water Co.,* 5 Cal. 43, 63 Am. Dec. 76; *Flanagan v. Plainfield,* 44 N. J. L. 118; *Callanan v. Judd,* 23 Wis. 343; *McDermont v. Dinnie,* 6 N. D. 278, 69 N. W. 294; *State ex rel. Schalk v. Wrightson* (N. J.), 32 Atl. 820; *People ex rel. Bolton v. Albertson,* 55 N. Y. 50; *Ex parte Cox,* 44 Fla. 537, 33 South. 509; *Brown v. Kalamazoo County Circuit Judge,* 75 Mich. 274, 42 N. W. 827, 13 Am. St. 438, 5 L. R. A. 226; *State ex rel. Vance v. Wilson,* 30 Kan. 661, 2 Pac. 828; *Graham v. Cowgill,* 13 Kan. 114; *State ex rel. Keeler v. Allen,* 5 Kan. 213; *Marbury v. Madison,* 1 Cranch 137, 2 L. Ed. 60; *Florida v. Georgia,* 17 How. 478, 15 L. Ed. 181; *Harrison v. Nixon,* 9 Pet. 483, 9 L. Ed. 201; *California v. Southern Pac. Co.,* 157 U. S. 229, 15 Sup. Ct. 591, 39 L. Ed. 683; *Jim v. State,* 3 Mo. 147; *Ex parte Vallandigham,* 1 Wall. 243, 17 L. Ed. 589; *Virginia v. Rives,* 100 U. S. 313, 25 L. Ed. 667.   The act violates section 2 of article 14 of the constitution, in that it

authorizes a partial removal of the county seat without a vote of the people. *Board of Commissioners of White County v. Gwin*, 136 Ind. 562, 36 N. E. 237, 22 L. R. A. 402; *Williams v. Reutzel*, 60 Ark. 155, 29 S. W. 374; 7 Am. & Eng. Ency. Law (2d ed.), p. 1012; *Whitener v. Belknap*, 89 Tex. 273, 34 S. W. 594; *Coulter v. Routt County*, 9 Colo. 258, 11 Pac. 199; *State ex rel. Attorney General v. Moores*, 55 Neb. 480, 76 N. W. 175, 41 L. R. A. 624. The right to trial by jury drawn from the body of the county, is part of our common law, and under the constitution must remain inviolate. 24 Geo. II, ch. 18; 6 Geo. IV, ch. 50; 20 Stat. at Law, p. 184; 65 Stat. at Law, p. 438; Laws 1854, p. 431; Laws 1863, p. 88; Const., art. 1, § 21; *Swart v. Kimball*, 43 Mich. 443, 5 N. W. 635; *McRae v. Grand Rapids etc. R. Co.*, 93 Mich. 399, 53 N. W. 561, 17 L. R. A. 750; *Hewitt v. Saginaw Circuit Judge*, 71 Mich. 287, 39 N. W. 56; *United States v. Dixon*, 44 Fed. 401; *Hartshorne's Lessee v. Patton*, 2 Dal. (Pa.) 252; *White v. Commonwealth*, 6 Binn. (Pa.) 179; *Shaffer v. State*, 1 How. (Miss.) 238.

· *John C. Hogan* and *J. B. Bridges* (*Theo. B. Bruener, J. C. Cross, Boner & Boner, W. I. Agnew, C. W. Hodgdon*, and *Glen Snider*, of counsel), for respondents, contended, *inter alia*, that a statute can be declared unconstitutional only where specific restrictions have been violated. Black, Interpretation of Laws, p. 93, and cases cited; *Smith v. Seattle*, 25 Wash. 300, 65 Pac. 612; *State v. Vance*, 29 Wash. 435, 70 Pac. 34; *Ogden v. Saunders*, 12 Wheat. 213, 270, 6 L. Ed. 606; Cooley, Const. Lim. (6th ed.), pp. 194, 204, 391; *Chicago & N. W. R. Co. v. Dey*, 35 Fed. 866. The legislature may create judicial districts comprising less than the whole county from which jurors may be selected, etc. 24 Cyc. 190; 12 Plead. & Prac. 289; *State v. Kemp*, 34 Minn. 61, 24 N. W. 349; *Ellis v. State*, 92 Tenn. 85, 20 S. W. 500; *Swart v. Kimball*, 43 Mich. 443, 5 N. W. 635; *Poindexter v. Commonwealth*, 74 Va. 766; *Baccigalupo v. Commonwealth*,

74 Va. 807, 36 Am. Rep. 795; *Colt v. Eves*, 12 Conn. 251;
*Gardiner v. People*, 6 Parker (N. Y. Crim. R.) 155; *State
ex rel. Clark v. Neterer*, 33 Wash. 535, 74 Pac. 668; *Shaffel
v. State*, 97 Wis. 377, 72 N. W. 888; *People v. Stokes*, 103
Cal. 193, 37 Pac. 207, 42 Am. St. 102; *State v. Pugsley*, 75
Iowa 742, 38 N. W. 498; *State ex rel. Brown v. Stewart*, 60
Wis. 587, 19 N. W. 429, 50 Am. Rep. 388; *United States v.
Stowell*, 2 Curtis (U. S.) 153; *United States v. Richardson*,
28 Fed. 61; *United States v. Chaires*, 40 Fed. 820; *Agnew v.
United States*, 165 U. S. 36, 17 Sup. Ct. 235, 41 L. Ed. 624.
Creating a place for the holding of court at a place other
than at the county seat, is not a removal of the seat of justice.
11 Cyc. 717; *Smith v. Hall*, 71 Conn. 427, 42 Atl. 86; *Whal-
lon v. Gridley*, 51 Mich. 503, 16 N. W. 876; *Bourne v. Salin*,
28 Ky. Law 555, 89 S. W. 673; *Ellis v. State, supra; Woods
v. McCay*, 144 Ind. 316, 43 N. E. 269, 33 L. R. A. 97; *Dun-
lap v. Thomas*, 69 Iowa 358, 28 N. W. 637; *Lyon v. Board
of Supervisors of Steuben County*, 100 N. Y. Supp. 676;
*Trimble v. State*, 2 Iowa 404; *Lee County v. Deming*, 3 Iowa
101; *Bouldin v. Ewart*, 63 Mo. 330; *Ex parte Shean*, 25
Ohio St. 440; *Waller v. Tully*, 75 Ill. 576; *Commonwealth v.
Scott*, 10 Gratt. 749; *Willie v. Parkhurst*, 31 N. H. 415;
*Rosencrans v. United States*, 165 U. S. 257, 17 Sup. Ct. 302,
41 L. Ed. 708.

Morris, J.—Application for peremptory writ of prohibi-
tion, the issuance of which involves the constitutionality of
Laws 1909, page 82, chap. 49, entitled:

"An Act relating to the dividing of counties into districts
for judicial purposes, and for holding sessions of the Super-
ior Court of the State of Washington at places other than
the county seat, and providing means to make this act ef-
fective, and defraying the expenses incident thereto, and de-
claring an emergency."

The entire act is involved in the questions submitted to us for
determination. It will, therefore, be necessary to set forth

its provisions quite extensively, for a proper understanding of our discussion of the points involved.

Section 1 provides for holding sessions of the superior court at places other than the county seat, whenever such sessions shall be determined upon the manner in the act provided. Section 2 provides that a majority of the board of county commissioners, whenever they determine it to be to the best interests of the people, shall divide the county into two or more judicial districts, and upon such determination such action shall be submitted to the judge or judges of the superior court for his or their approval and confirmation. Section 3 provides for holding sessions of the court in the designated and approved places whenever business therein .shall require. Section 4 provides that, in forming such districts and designating the place for holding court, the board shall be governed by considerations of convenience and economy. Section 5 empowers the board to provide a jail and place for holding court, to be paid for out of the general county fund. Section 6 and 7 provide for the appointment of necessary deputy clerks and deputy sheriffs, who shall reside at the place designated; for the payment of their salaries and furnishing them with necessary supplies and records; the deputy clerk to be provided with a seal, the same as used by the county clerk. Section 8 provides for the duplication of all lienable judgments and decrees, one to be filed in the office of the deputy clerk, and the other, duly certified as a correct copy, shall be transmitted to and filed in the office of the county clerk. Section 9 arranges for the consecutive numbering of the districts, commencing with district No. 1. Section 10 provides for the purpose of determining the proper district any action shall be triable in; that each district shall be considered as a separate and distinct county; and the law applicable to the venue of actions shall apply to each district as if such district constituted a separate and distinct county. Section 11 provides for granting a change of venue from one district to another as from one county to

another.   Section 12 provides that the judgments and orders
of the court in any district shall have the same effect through-
out the county except that sales shall be made at the court
house in the district.   Section 13 provides that the only lia-
bility for jury duty shall be in the district in which the citi-
zen may reside, and for the purposes of this act each district
shall be considered as a separate and distinct county.   Sec-
tion 16 provides for the return of all process issued out of
each district court, to be made to the proper district which
shall be disclosed in the process, and that the clerk shall style
himself as the clerk of the court or county, and not the clerk
of any district.   Section 17 provides that the style of all ac-
tions shall be as now, except that the number of the district
shall be added.   Section 18 provides for trial of persons
charged with crime in the district in which the crime is al-
leged to have been committed, and for the purpose of deter-
mining the venue, each district shall be considered as though
it composed a separate and distinct constitutional county.
The remaining sections of the act need not be referred to.

The relators claim the act is unconstitutional, in this: (1)
That the act restricts the jurisdiction of the superior courts.
(2) The creation of a judicial district is a legislative power
that cannot be delegated to a board of county commissioners,
or to judges of the superior court.   (3) The act violates § 4,
art. 11, of the constitution providing for a uniform system of
county government, by authorizing the creation of unlimited
judicial districts.   (4) The act violates § 2, art. 14, of the
constitution, in authorizing a partial removal of the county
seat, without a vote of the people.   (5) The act unconstitu-
tionally authorizes the division of counties for judicial pur-
poses.   (6) The act violates § 22, art. 1, of the constitution,
which guarantees to accused persons the right to have a
speedy public trial by a jury of the county.

It is not necessary to discuss each of these several as-
signments; if the constitutionality of the act cannot be sus-
tained upon any one good reason, it is immaterial in what

other respects, if any, it is in conflict with the constitution. Section 5, art. 4, of the constitution provides that: "There shall be in each of the organized counties of this state a superior court," for which one judge is provided until otherwise directed by the legislature. The plain mandate of this section is one court, with as many sessions as there are judges. It was the apparent intention of the framers of our constitution to make the county the judicial unit for the superior court, leaving, as a matter of proper legislative enactment, the determination of the proper number of judges to be attached to the court in each county. The constitution being a limitation of power, it follows that there is no power vested in the legislature, nor in any board of county commissioners, nor in any judge of any superior court, to divide this constitutional judicial unit into judicial districts, or other territorial limitations less than the county itself. The plain and manifest intendment of this section is that, it being conceded the time would come when by reason of the growth of population and business, one judge could not properly handle the business of the court, such increased business was to be provided for, not by the creation of additional superior courts, but by the creation of additional judges, or, under other constitutional provisions, the creation of additional counties,—one court, with as many judges as might be necessary. The words, "a superior court," as used in the constitution of Connecticut, are held, in *Smith v. Hall*, 71 Conn. 427, 42 Atl. 86, to mean that there shall be one, and only one, tribunal by that name.

Respondents contend that the act does not purport to provide for additional superior courts, but for a holding of the court only in different districts. We cannot so read the act. By its provisions the court in each district is made independent of any other court; its jurisdiction, its procedure, pertains solely to itself; it is dressed in all the statutory paraphernalia of a court; it has its own records for the entry of its orders, judgments, and decrees; it has its own officials, who

must reside at its situs; it has its own seal, its own jail, its own courthouse; it grants and receives changes of venue from other courts; it has a distinct name and process; it has its own list of trial jurors, its juridical sales are made at its own door; it has a distinctive style for all actions and proceedings over which it assumes jurisdiction.

Under what process of reasoning can it be said that such courts are one and the same court? Can a court have two seals? Can a court grant a change of venue from itself to itself? Can a court have a distinctive title and style of process in one section of a county and a different in another? Can a court enter its orders, judgments, and decrees in records which are not its own records? Will it be contended that a summons requiring a defendant to appear in the superior court of Chehalis county for district No. 1 is fully met, so as not to subject him to a default judgment and the consequent loss of his property, by an appearance within the twenty days in the superior court of Chehalis county for district No. 2? If it is the same court, yes; because a defendant cannot be required to enter his appearance twice in the same action and at two different places. Yet, under the provisions of this act, it is apparent that such an appearance would subject any defendant to a default judgment, because he had not appeared within the time and within the court designated in the summons; he had not appeared in the court in which his action was triable.

Section 10 determines the place of trial of actions in each district as if each district was a separate and distinct county. Section 11 has a similar provision in regard to change of venue from one court to another, and for such purpose each district is constituted a separate and distinct county. If for the purpose of determining the place of trial, and if for the purpose of changing the venue, each district is constituted a separate and distinct county, how can it be said that the courts in which these several actions are triable, and

from which and to which these changes of venue are taken, are not separate and distinct courts? In section 18, for the purpose of the venue of criminal actions, the act attempts to go a step further, in providing that each district shall be considered as though it composed a separate and distinct constitutional county. One might well inquire how it could be that the place where a crime is committed and the place where the accused is triable for the offense is a separate and distinct constitutional county, and yet the court in which he is tried is not a separate and distinct constitutional court. If persons accused of crime are not to be tried in "separate and distinct constitutional" courts, it is to be feared the legislature has labored in vain in giving a criminal code and laws to the people of this state.

The constitution providing that "there shall be in each of the organized counties of this state a superior court" (art. 4, § 5), and the constitution further providing that "no new county shall be established which shall reduce any county to a population less than 4,000, nor shall a new county be formed containing less than 2,000" (art. 11, § 3), it follows that there could be no superior court within any territorial limitation containing a less population than two thousand. Yet, the only limitation governing the commissioners in the establishment of these new courts is "whenever they determine it to be for the best interests of the people of the county." No rules nor prerequisites are given as to how or when this discretion is to be exercised, and under it, should they so determine, they could provide for the establishment of this court in every precinct in the county, with all its attendant paraphernalia of clerks, sheriffs, courthouses, and jails, entailing useless and unnecessary burdens of taxation upon the people; and while this goes more to the wisdom of the act than to its legality, and is therefore a legislative and not a judicial question, it is of the character of reasoning not infrequently discussed by courts in dealing with questions affecting the legality of legislative enactment.

A good illustration of this may be found in the case of *Lindsley v. Board of Supervisors*, 69 Miss. 815, 11 South. 836, in determining a like question to that before us. Prior to 1859 the legislature of Mississippi passed an act dividing Hinds county into two judicial districts, and providing for the holding of the circuit court in each district, and the drawing of a petit jury from the freeholders of each district. Alfred (a slave) was charged with murder, and upon his trial contended that the jury was not a constitutional jury, in that it was drawn from a district within the county and not from the whole county. The only constitutional provisions bearing upon the point were as follows: "In all proceedings by indictment or information the accused hath a right to a speedy and public trial by an impartial jury of the county where the offense is committed;" and "The right of trial by jury shall remain inviolate." The court held there was no inhibition in either of these two sections against the division of counties into judicial districts and the drawing of jurors from such districts. In 1890 a new constitution was adopted in Mississippi, which made no change in the provisions respecting courts or judicial districts, and the court held in *Lindsley v. Board of Supervisors, supra,* that by the adoption of the same provision in the new constitution the construction placed upon it by the court in the *Alfred* case was likewise adopted. But the court adds:

"In the six counties named the spectacle was presented of practically twelve counties in nearly all but names. While each of the six had one name, and one set of county officers, elected by the electors of the county, and was but one for certain purposes, it had two seats of justice, two circuit and chancery courts, two courthouses, two jails, two sets of record books; in fact, it was double as to nearly everything that can be called 'county matters.' All of this came about gradually, step by step, from the seemingly harmless enactment sustained by the decision of *Alfred v. State*. Had the appalling results which have flowed from it been foreseen by the court, it is incredible that it would have made that unfortu-

nate decision, but it was made, and we have the evil results, and had them when the constitution of 1890 was adopted, which contains no word of condemnation or prohibition or restriction of the practice of dividing counties into court districts."

In the above case the act was by the legislature itself, and thus much stronger in its constitutional phases than the act in question, where the legislature attempts not to exercise the power itself, but delegates it to boards of county commissioners.

In Arkansas an act was passed dividing Sebastian county into two judicial districts, one to be styled the "Circuit Court of the County of Sebastian for the Fort Smith district;" the other, "The Circuit Court of the County of Sebastian for the Greenwood district." It was contended the act was unconstitutional, in that it violated that section providing that, "No county now established by law shall ever be reduced by the establishment of any new county or counties to less than six hundred square miles." The court in part thus treats this contention:

"The enactment, under consideration, attempts to divide Sebastian county into two judicial districts, . . . and provides that each 'shall be as independent of, and distinct from each other, and shall hold the same relation to each other as if they were courts of different constitutional counties of this state, and shall be deemed, for all purposes of this act, separate and distinct counties, with original and exclusive jurisdiction within their respective territorial limits.' Thus it will be seen that the legislature is providing for all the attributes of a county, and creating all the essential features of these public corporations . . . the individuality of Sebastian county is entirely destroyed and obliterated. . . . The clerk must keep two offices, one in each district, and all matters of public record pertaining to either must be kept separate and distinct. . . . The objects of this law were to create two separate and distinct districts in Sebastian county, with all the powers and immunities of any constitutional county of the state, the area being less

than six hundred square miles, which object, if carried out, would destroy the identity of Sebastian county"; *Patterson v. Temple*, 27 Ark. 203;

and the contention of the unconstitutionality of the act was sustained.

We fail to see how the legislature, or any other body, can create a separate and distinct constitutional county, or a district for judicial or other purposes which is to be considered and regarded as a separate and distinct constitutional county, unless it be after first in some way determining that constitutional condition precedent required in the establishment of a "separate and distinct constitutional county." *Farquharson v. Yeargin*, 24 Wash. 549, 64 Pac. 717. Under § 6, art. 4 of the constitution, the superior court has original jurisdiction in all cases in equity, certain enumerated cases at law, all felonies, certain misdemeanors, and other enumerated actions and proceedings, including appellate jurisdiction in cases arising in justice's court in their respective counties. This section, in connection with other sections in the same article, provides a complete system of superior courts, and taken together they form a limitation beyond which the legislature may not go.

"It was the object of the framers of the constitution to mark out a complete judicial system. . . . Such a system cannot be changed by action of the legislative department, except when the power to make the change is conferred by the constitution itself." *Ex parte Cox*, 44 Fla. 537, 33 South. 509, 61 L. R. A. 734.

Neither can the legislature pass an act which in any wise modifies, alters, or changes the jurisdiction of the superior courts of the respective counties, as does this act, by taking away a jurisdiction which, under the general scope and purpose of the constitution, is co-extensive with the county, and substituting a jurisdiction which is controlled or limited to any extent by a geographical division, less than the whole

county. Counsel for respondents admit such to be the law, but they contend, quoting from their brief:

"The act in question does not diminish the jurisdiction of the superior court one iota. There is not a single action or proceeding which under the law was cognizable by a superior court before the passing of this act but what is equally cognizable by that court under the act. The only difference is that the court does not transact all of its business at the county seat, but it may transact part of it elsewhere."

Such argument might be plausible were it not for the provisions of §§ 8, 10, 11, 13, 18, and 21. What jurisdiction does the superior court of Chehalis county for district No. 1 have over the orders, judgments, and decrees, or other instruments, not a lien upon real estate, emanating from the superior court of Chehalis county for district No. 2, which, under the provisions of the act, are to be entered only in the records of district No. 1? Or, if it be claimed that it has such a jurisdiction, then we have the situation, unknown to legal procedure, of a court dividing its original jurisdiction over its own records with another court in which there is no provision for the entry of such a record. The provision of section 10, if it means anything at all, is that the venue of all actions shall be determined as if the district were a separate and distinct county. What jurisdiction, then, has the court in district No. 1 over those actions, the proper venue of which under this provision is in district No. 2? Or, if it be said that the jurisdiction is the same and original in both, why the meaningless provision for a change of venue as from one county to another, as provided for in § 11? What jurisdiction, if any, has the court in district No. 1 over the drawing of jurors in district No. 2, and the use and control of them as attempted to be provided for in § 13? And what is the meaning of § 18, in providing that in all criminal actions the accused shall be tried in the district where the offense was committed, and for that purpose each district shall be considered as a separate and distinct constitutional county?

Every constitutional county in this state has conferred upon its superior court a certain jurisdiction, and the attempt of this act to consider the district as a separate and distinct constitutional county is nothing less than an attempt to take from the superior court of Chehalis county a jurisdiction which under the constitution it now has, and divide that jurisdiction between the superior court of district No. 1 and the superior court of district No. 2, each district for that purpose being a separate and distinct constitutional county. Both the courts have together the same jurisdiction, both original and appellate, as is now conferred upon the superior court of the county; but under this act, such jurisdiction is divided into as many parts as there may be districts created by the board of county commissioners. Such being the purpose and effect of the act, it is rendered invalid. *Wilson v. Roach,* 4 Cal. 362; *Zander v. Coe,* 5 Cal. 230; *Allen v. Kent Circuit Judge,* 37 Mich. 473; *Flanigan v. Guggenheim Smelting Co.,* 63 N. J. L. 647, 44 Atl. 762.

The litigants of Chehalis county have conferred upon them, under the sections of the constitution above quoted, rights which neither the legislature nor board of county commissioners could take away. They have the right to go into the superior court of Chehalis county for relief, and that right cannot be abridged by compelling them to submit their controversies to any superior court in any territorial district less than the entire county. *Mason v. Ausable Granite Works,* 18 N. Y. Supp. 267.

Having reached the conclusion that the act in question is in conflict with the sections of the constitution above quoted, we do not discuss the remaining contentions of invalidity.

Let the writ issue.

RUDKIN, C. J., PARKER, MOUNT, GOSE, and CROW, JJ., concur.

CHADWICK, J. (concurring)—It is provided, in § 5, art. 4, of the constitution:

"There shall be in each of the organized counties of this state a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general state election:  .  .  .    In any county where there shall be more than one superior judge, there may be as many sessions of the superior court at the same time as there are judges thereof, and whenever the governor shall direct a superior judge to hold court in any county other than that for which he has been elected, there may be as many sessions of the superior court in said county at the same time as there are judges therein or assigned to duty therein by the governor, and the business of the court shall be so distributed and assigned by law, or, in the absence of legislation therefor, by such rules and orders of court as shall best promote and secure the convenient and expeditious transaction thereof  .  .  ."

In concurring I do not want to be understood as holding that it is not within the power of the legislature to provide that sessions of the superior court can be held at places other than the county seat, when, in the judgment and discretion of the superior judge or of the legislature, it would serve the convenience of the public or result in the prompt and economical administration of justice.   Since the time the ancient justices in eyre—*justiciarii in itinere*—were recognized or possibly created by the parliament of Northampton, in 1176, 22 Hen. II, and made their circuit around the Kingdom for the purpose of hearing and determining causes, the fact that the seat of justice or place of holding court is a matter to be resolved by the legislative judgment, based upon considerations of convenience and economy, has been impliedly, if not expressly, recognized.   Hence, the question is left open, in most if not all of the states, for the legislature to say where the sessions of the courts of general jurisdiction shall be held.   In this state it is provided, Bal. Code, § 4665 (P. C. § 4364):

"The superior courts are courts of record, and shall be always open, except on non-judicial days.  They shall hold

their sessions at the county seats of the several counties, respectively."

Laws permitting courts to be held, or laws establishing courts to be held, at places other than county seats have been frequently upheld, as in no way conflicting with the constitutional provision concerning the location or removal of county seats. *Ellis v. State*, 92 Tenn. 85, 20 S. W. 500; *Whallon v. Gridley*, 51 Mich. 503, 16 N. W. 876; *Johnson v. Fulton*, 121 Ky. 594, 89 S. W. 672; *Cooper v. Mills Co.*, 69 Iowa 350, 28 N. W. 633; *Lyon v. Board of Supervisors*, 100 N. Y. Supp. 676.

Therefore, bearing in mind that an entire act will not be held obnoxious to the constitution, if the court can reject that part which is unconstitutional and still leave a complete act, I have blue pencilled all those parts and sections of the act of 1909 which provide for a division of the court and its territorial jurisdiction into areas less extensive than the constitutional unit, and the establishment of separate courts therein, to see if the act cannot be sustained. It is not certain that enough is left to make it a complete act; but if so, it seems to me that the part remaining would be inconsistent with the legislative intent, which was to make separate and distinct courts as well as jurisdictions. That rule of construction, then, would not apply in aid of the statute, for the rule is applied to preserve the legislative intent rather than to destroy it. In my judgment the legislature has the undoubted right to provide that sessions of the superior courts may be held at places other than the county seat. But under our constitution (art. 4, § 5), the court must remain a judicial entity, albeit sessions may be held for the trial of cases, regularly or upon occasion, at different places. The court, whatever the number of judges, must be the same court and open to all litigants within the county. It was not the intent of the present act to accomplish this, but rather to make two or more separate courts out of one court, with exclusive original jurisdiction in a territory less than the

constitutional unit which is the county itself, and within which there can be but one court, whatever number of departments may be established for the more convenient trial of causes.

I have examined the cases cited by respondents and the statutes which they have assumed to construe, and in none of them do I find anything to sustain the object sought to be attained in the act under review, but they do sustain the principles which I have sought to make plain.

DUNBAR and FULLERTON, JJ., concur with CHADWICK, J.