[No. 31456. Department One. November 2, 1950.]

KING COUNTY, *Appellant*, v. THE PORT OF SEATTLE *et al.*, *Respondents.*[1]

[1]Reported in 223 P. (2d) 834.

*Charles O. Carroll* (*Allen, Hilen, Froude & DeGarmo* and *Stuart G. Oles*, of counsel), for appellant.

*Bogle, Bogle & Gates, Frank L. Mechem, Tom M. Alderson*, and *Max Kaminoff*, for respondent Port of Seattle.

*Little, LeSourd, Palmer & Scott*, for respondent Yellow Cab Co.

DONWORTH, J.—King county instituted this action seeking (1) to enjoin the defendant The Yellow Cab Company, a partnership, from picking up passengers at the Seattle-Tacoma airport without a King county license to do so; (2) to enjoin the defendant Port of Seattle, a municipal corporation, from granting certain franchises and privileges to the partnership known as The Yellow Cab Company; (3) to enjoin the Port of Seattle from interfering with the operation of county-licensed cabs at the airport; and (4) to obtain a declaratory judgment with respect to the constitutionality of certain provisions of the "Revised Airports Act." (Rem. Supp. 1945, § 2722-30 *et seq.*)

The defendants answered separately denying all of the material allegations of the complaint and affirmatively alleged as a defense that the Port of Seattle was empowered by law to perform the acts objected to in the complaint and that it was necessary for the Port of Seattle to enter into a contract with The Yellow Cab Company in order to provide the patrons of the airport with satisfactory ground transportation service. The answer of The Yellow Cab Company in addition asserted that King county was not the proper party to bring the action and further challenged the power of King county to license the operation of taxicabs. By cross-complaint, The Yellow Cab Company asked for a writ of mandamus to require the King county license director (who was named as cross-defendant) to issue licenses to The Yellow Cab Company in the event that the trial court should hold that the plaintiff had validly undertaken the licensing of taxicabs.

Before trial, the court overruled plaintiff's demurrers to certain of defendants' affirmative defenses.

The cause came on duly for trial before the court, without a jury. The trial consumed five days and the evidence covered a wide range and included many issues which we deem it unnecessary to consider in view of the conclusion we have reached on the principal questions involved. After the trial was concluded the court rendered an oral decision in favor of the defendants. Thereafter, having denied plaintiff's motions for judgment notwithstanding the oral decision or alternatively for a new trial, the court entered findings of fact and conclusions of law and a decree dismissing the action. Plaintiff has appealed from the decree of dismissal.

Respondent partnership will be referred to as "Yellow Cab" and respondent Port of Seattle as the "Port." King county will be designated as "the county" or appellant.

The Seattle-Tacoma airport is located within the physical boundaries of King county and outside the boundaries of the city of Seattle. The airport is owned and operated by the Port of Seattle, a municipal corporation, which has been

given the express statutory authority to acquire, maintain and operate airports either within or without the boundaries of the county in which the port district is situated. Rem. Supp. 1945, § 2722-30 *et seq.* All roads within the boundaries of the airport are constructed and maintained with port funds.

Prior to July 9, 1949, the airport had a temporary passenger terminal while awaiting the completion of a permanent administration building which was opened on that date. During this period taxi service was handled by numerous cab companies, including those cabs licensed by King county. Testimony produced on behalf of respondent Yellow Cab showed that this sort of service was quite unsatisfactory. Taxicabs were operating contrary to the regulations which had been made by the Port with respect to the parking of cabs and the soliciting of passengers. Numerous complaints were received by the airport manager as to discourteous treatment of passengers by drivers, improper maintenance of equipment and overcharges.

When the permanent administration building was opened, the airport manager proposed to the port commissioners that the Port enter into a temporary agreement with a responsible company to furnish twenty-four hour taxicab service at the airport. The commissioners approved this suggestion and several taxicab companies were consulted as to the possibility of their providing the type of service desired. Yellow Cab was the only operator to submit a written offer to the Port.

After considering this offer the Port wrote to Yellow Cab as follows:

"This is to notify you that your proposal to furnish*ed* taxi cab service at Seattle-Tacoma International Airport, as outlined in your letter of July 7th and modified by verbal agreements in conference since that time, has been accepted by the Port Commission.

"It is understood that you will be provided with ten spaces for parking your vehicles in the area known as the South parking lot, in a location assigned to you by the airport manager for which you will pay the Port of Seattle a monthly fee of $50 or the current price charged by the con-

cessionaire in the North parking lot, which ever is greater. This amount is to be paid monthly in advance.

"It is also agreed that you will pay to the Port of Seattle an amount equal to 10% of the gross revenue derived from business originating at the Airport. This amount to be paid not later than the 15th of the month following the month in which the revenue is derived.

"It is also agreed that you will provide a starter or representative, without cost to the Port of Seattle, to be stationed at the Airport ramp loading and unloading vehicles. It is also agreed that you will be permitted to have one cab parked on the ramp for immediate use when necessary. It is further agreed that you will have use of the starter office without charge and be permitted to install necessary communications therein.

"This agreement is not for any definite period of time but on a month to month basis. Please sign and return one copy of this agreement, retaining the other copy for your files."

Yellow Cab accepted this counterproposal, and the two respondents have carried out the terms of their agreement continuously since July, 1949.

We quote the following portions of the findings made by the trial court which form the basis of the present controversy:

"III

"That The Yellow Cab Company is licensed by the City of Seattle to operate taxicabs and does so operate taxicabs, but that The Yellow Cab Company is not licensed by King County to operate taxicabs.

"IV

"That The Yellow Cab Company picks up passengers at the Seattle-Tacoma Airport; that it maintains a starter who is stationed in an office in the administration building which office is near the ramp in front of the administration building; that it rents from the Port of Seattle ten parking spaces and has the exclusive use of said spaces; that it does not solicit passengers at the airport, but that the starter maintained by it does call cabs to the ramp when passengers desire same; and that The Yellow Cab Company makes a charge to its patrons for transportation to their destinations.

"V

"That taxicab drivers licensed by King County are permitted the use of the ramp or driveway in front of the administration building and are allowed to deliver passengers

thereon and are permitted to call for and pick up any passenger who so desires and makes his own arrangements with any taxicab driver, including taxicab drivers licensed by King County; that cabs licensed by King County are permitted to use the parking facilities provided by the Port of Seattle that have been assigned to the use of the general public on the same terms and conditions applicable to the general public; that licensed King County cab drivers have not rented exclusive parking spaces and that they are not permitted to solicit passengers on the premises.

"VI

"That the license resolution of King County specifies the rates to be charged for taxicab passengers; that the rates charged by defendant The Yellow Cab Company were at the time of the bringing of this action in excess of the rates provided by the King County license resolution, but that on and after September 1949, at which time the City of Seattle changed the city license rates, the defendant The Yellow Cab Company made charges and is now charging rates that are lower than the rates prescribed by the King County resolution for the fares charged passengers traveling from the Seattle-Tacoma Airport to a central point in downtown Seattle.

"VII

"That the Port of Seattle does not claim the power to enact penal resolutions or ordinances; that no agent, officer or employee of the defendant Port of Seattle has ever made any arrests at the Seattle-Tacoma Airport for the violation of any of the rules or regulations of the Port of Seattle, but that three of the guides of the Port of Seattle have been deputized by the Sheriff of King County for the purpose of acting as deputy sheriffs for the enforcement of violations of state law at the Seattle-Tacoma Airport.

"VIII

"That on September 21, 1949 the defendant, The Yellow Cab Company, applied to the Additional Cross-Defendant, Frank Coyle, License Director of King County, Washington, by letter for operators' licenses for ten taxicabs for use in transporting passengers from the Seattle-Tacoma International Airport. On October 6, 1949 the said Frank Coyle replied that no licenses were available and at no time thereafter has he issued or offered to issue licenses for said cabs in accordance with said application.

"IX

"That Resolution No. 10335 of the County Commissioners of King County, Washington provides that taxicab oper-

ator's licenses must be secured from the King County License Department; that Additional Cross-Defendant, Frank Coyle, as License Director, is head of the King County License Department; that The Yellow Cab Company has complied with all requirements of said Resolution No. 10335 for the issuance of ten operators' licenses to it; that if the provision of Resolution No. 10335 limiting the number of taxicabs is valid and effective, there are a sufficient number of licenses authorized by said provision to require the granting of The Yellow Cab Company's application for ten operators' licenses."

█ In its opening brief appellant challenges four sentences in these findings as being "manifestly erroneous" in view of the evidence. This being an equity case, we are trying it *de novo*, but we will accord great weight to these findings. *Fisher v. Hagstrom*, 35 Wn. (2d) 632, 214 P. (2d) 654. We have examined the testimony and the exhibits bearing upon the portions criticized by appellant and are of the opinion that we should adopt as our own the findings of fact made by the trial court.

In considering appellant's assignments of error we must bear in mind the undisputed fact that only fifteen taxicabs are required each twenty-four hours to transport all incoming airplane passengers desiring such transportation from the airport to their ultimate destinations. Based on an average fare of $3.50 (plus 10c for each extra passenger) to the center of Seattle, the total gross revenue derived by Yellow Cab from airport business would not exceed sixty dollars per day. Under the agreement between respondents the Port would receive six dollars per day plus fifty dollars per month, or a total monthly rental of approximately $230 for this concession.

Appellant contends that the trial court erred in failing to enjoin the Port from granting exclusive privileges and concessions to Yellow Cab pursuant to the above-quoted agreement. Appellant uses the term "monopoly" to describe this agreement between the respondents.

In support of this contention, appellant has presented a number of ingenious arguments. Assuming, however, that

exclusive privileges and concessions (which may be unlawful) have been granted to Yellow Cab by the Port, we do not feel that we are required to answer appellant's arguments in support of this assignment of error because appellant has failed to show that any legal right has been or is about to be invaded which would entitle it to an injunction under the facts of this case.

It is an established rule in this jurisdiction that it is incumbent upon one who seeks relief by temporary or permanent injunction to show a clear legal or equitable right and a well-grounded fear of immediate invasion of that right. *State ex rel. Hays v. Wilson*, 17 Wn. (2d) 670, 137 P. (2d) 105. Furthermore, the acts complained of must establish an actual and substantial injury or an affirmative prospect thereof to the complainant. *Tifft Co. v. State Medical Institute*, 53 Wash. 365, 101 Pac. 1081; *Rumbolz v. Public Utility Dist.*, 22 Wn. (2d) 724, 157 P. (2d) 927; 43 C. J. S. 439, Injunctions, § 22 (a).

"In judicial proceedings, no one can be heard to complain unless he can show that he has been injured. Accordingly, one who seeks injunctive relief in a court of equity must satisfy the court, not only that he has a clear right of a character which equity will protect, but also that the act or acts complained of constitute an injurious invasion of that right which will result in or threatens actual and substantial damage. Injunction will not be granted to restrain acts, however irregular or unauthorized, that occasion no injury to the complainant, and the relief, it has been said, will be denied where the complaining party suffers mere mental discomfort unaccompanied by anything else. . . . The basis for injunctive relief must be interference with a legal right of the plaintiff, not of a third party, for the complainant cannot succeed because someone else may be hurt, and it does not make any difference that other persons who may be injured may be of the same race or occupation." 28 Am. Jur. 220, Injunctions, § 28.

We cannot find from the evidence that any legal right of appellant has been in any manner invaded by the activities of the Port in connection with the "exclusive franchise" granted to Yellow Cab. If anyone has been

harmed by the acts of respondents (assuming their illegality) it would appear to be the operators of taxicabs licensed by King county. They are not parties to this action. Appellant cannot take upon itself the duty of protecting the interests of its licensees. *Vance Lbr. Co. v. King County*, 184 Wash. 402, 51 P. (2d) 623. Appellant has wholly failed to show that its own rights are or are about to be threatened and that if an injunction is not granted irreparable injury will result to it. Consequently, appellant has no standing to enjoin the operation of the agreement between respondents.

The same reasoning is applicable to appellant's request for an injunction enjoining the Port from interfering with the operation of taxicabs licensed by the county within the limits of the airport. Whether the operators of the county-licensed cabs might be able to question the right of the Port to accord them less favorable treatment at the airport than that accorded Yellow Cab is a question which we need not decide in this case. Since they are not parties to this suit, appellant may not be heard to complain on their behalf. For the reasons stated above, we hold that appellant has no standing to obtain an injunction against the Port's interference with the operation of taxicabs licensed by the county.

Appellant also prayed for injunctive relief to prevent Yellow Cab from picking up passengers at the airport unless the partnership holds county licenses issued pursuant to resolution No. 10335. This resolution requires "for hire" licenses for all taxicabs which contract for hire within the limits of King county outside the city of Seattle.

Rem. Supp. 1945, § 2722-44, a part of the "Revised Airports Act," provides as follows:

"Every airport and other air navigation facility controlled and operated by any municipality, or jointly controlled and operated pursuant to the provisions of this act, shall, subject to Federal and state laws, rules, and regulations, be under the exclusive jurisdiction and control of the municipality or municipalities controlling and operating it *and no other municipality* in which such airport or air navigation facility [is located] shall have any police jurisdiction of the same or *any authority to charge or exact any license fees* or occupa-

tion taxes for the operations thereon. Such municipality or municipalities shall have concurrent jurisdiction over the adjacent territory described in subdivision 3 of section 8 of this act." (Italics ours.)

In the absence of this provision of the revised airports act, King county might have the power to license all taxicabs operating at the airport. Assuming that to be true, however, the above-quoted section of the act clearly removes from appellant any right to impose licensing regulations on taxicab operations at the Seattle-Tacoma airport. Therefore, unless it can be held that Rem. Supp. 1945, § 2722-44, is unconstitutional, the judgment of the trial court dismissing the action of the appellant must be affirmed.

There appears to be a division of authority whether a political subdivision of a state may question the constitutionality of a statute under circumstances similar to those existing here. 16 C. J. S. 168, Constitutional Law, § 76; *Hewitt & Sons Co. v. Keller*, 223 Iowa 1372, 275 N. W. 94. In the cited case it was said:

"These quotations seem to us to indicate the only rule which is logical, or even tolerable, in the administration of our laws. As appears from one of them, some of the authorities base their decisions upon the ground of public policy, but the writer of this opinion believes that it can and should be predicated upon even broader and more substantial grounds, and they are these: Counties and other municipal corporations are, of course, the creatures of the legislature; they exist by reason of statutes enacted within the power of the legislature, and we see no sound basis upon which a ministerial (or, for that matter, any other) office may question the laws of its being. The creature is not greater than its creator, and may not question that power which brought it into existence and set the bounds of its capacities."

Assuming, without deciding, that appellant may question the validity of the statute involved in this case, we are of the opinion that the revised airports act does not violate either of the two provisions of the state constitution which form the basis of appellant's claims of unconstitutionality.

Appellant attacks Rem. Supp. 1945, § 2722-44 as unconstitutional because its effect is to remove a section of King county, to wit, the airport, from the territorial limits of the county in violation of Art. XI, § 3, of the constitution of the state of Washington which provides in part:

". . . There shall· be no territory stricken from any county unless a majority of the voters living in such territory shall petition therefor, and then only under such other conditions as may be prescribed by a general law applicable to the whole state."

It is appellant's position that Rem. Supp. 1945, § 2722-44, completely removes the territory comprising the Seattle-Tacoma airport from the jurisdiction of King county because the Port is thereby given "exclusive jurisdiction and control" of the area. In support of this argument appellant cites *State ex rel. Lytle v. Superior Court,* 54 Wash. 378, 103 Pac. 464.

We are of the opinion that Rem. Supp. 1945, § 2722-44, does not, nor does it attempt to, remove this territory from King county. The effect of this section, when read in the light of the entire revised airports act, is merely to preclude appellant from interfering with respect to the operation of the Seattle-Tacoma airport and forbids appellant's exacting any license fees since the legislature has declared its policy to be that the responsibility of providing adequate and satisfactory transportation and other public services shall belong to the Port. No territory is stricken from King county. The legislature by general law has taken away from appellant its power to exact license fees within the airport. This was its prerogative.

*State ex rel. Lytle v. Superior Court, supra,* involved a situation where the county commissioners attempted to organize judicial districts smaller than the county-wide districts provided for in the constitution. That decision is not in point with respect to the instant case.

Appellant's second ground of attack upon the constitutionality of this statute (Rem. Supp. 1945, § 2722-44) is that it withdraws police power from King county in contravention of Art. XI, § 11, of the state constitution.

Art. XI, § 11, reads:

"Any county, city, town or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

Appellant's argument is that the state is not by this act resuming its inherent police power through enactment of general laws applicable to the whole state, but rather it is a legislative attempt to exempt a particular geographical area from the operation of all county and city police measures and vest all police power over the area exclusively in the Port of Seattle.

That the "Revised Airports Act" and specifically Rem. Supp. 1945, § 2722-44, is a general law rather than a special law cannot be questioned. *Young Men's Christian Ass'n v. Parish*, 89 Wash. 495, 154 Pac. 785. This law operates uniformly as to all airports acquired by any municipality or municipalities in this state. The act defines municipality as meaning "any county, city, town or port district in this state." It is our opinion, therefore, that this act, in so far as it deprives King county of any authority to require licenses from operators of taxicabs within the Seattle-Tacoma airport, is a valid enactment of general application and does not violate Art. XI, § 11, above quoted.

Lastly, the appellant contends that the "Revised Airports Act" is unconstitutional in that it purports to grant police power to the Port of Seattle in violation of Art. XI, § 11, of the state constitution, which vests all local police power in counties, cities, towns and townships but not port districts.

Appellant calls attention to Rem. Supp. 1945, § 2722-37, subd. 3, which provides that a municipality (which is defined to include a port district) is authorized

"To adopt and amend all needful rules, regulations and ordinances for the management, government and use of any properties under its control, whether within or without the territorial limits of the municipality; to appoint airport guards or police, with full police powers; to fix by ordinance or resolution, as may be appropriate, penalties for the violation of said rules, regulations and ordinances, and enforce said penalties in the same manner in which penalties pre-

scribed by other rules, regulations and ordinances of the municipality are enforced. . . . Rules, regulations and ordinances shall be published as provided by general law or the charter of the municipality for the publication of similar rules, regulations, and ordinances. They must conform to and be consistent with the laws of this state and the rules and regulations of the aeronautics commission of the state. . . ."

 Appellant may not in this action raise the question of the constitutionality of the above-quoted section of the statute (assuming it does grant police power to the Port of Seattle) because no showing has been made that the Port of Seattle has interfered or threatened to interfere with appellant's exercise of the police power within the limits of the airport. We, therefore, express no opinion regarding the constitutionality of the last-quoted section of the act.

We have considered the other arguments made by appellant as a basis for seeking the relief prayed for and find them to be without merit.

Upon a thorough consideration of the evidence we conclude that the decree of the trial court dismissing the action was correct and it is hereby affirmed.

SIMPSON, C. J., BEALS, GRADY, and HILL, JJ., concur.