[No. 15296-3-I. Division One. April 14, 1986.]

THE CITY OF NORMANDY PARK, *Respondent,* v. KING COUNTY FIRE DISTRICT No. 2, *Appellant,* THE PORT OF SEATTLE, *Respondent.*

436

*Snure & Fleck, P.S.C.,* and *Clark B. Snure,* for appellant.

*Simmons & Viall* and *Wilton S. Viall III,* for respondent Normandy Park.

*Carrie Schnelker,* for respondent Port of Seattle.

COLEMAN, J.—On February 21, 1983, the City of Normandy Park annexed a previously unincorporated area of King County. Prior to annexation, the annexed area, hereinafter referred to as "Manhattan," was within the boundaries of, and was served by King County Fire District 2 (Fire District).

Following the annexation, pursuant to RCW 35.13.248,[1]

---

[1]RCW 35.13.248 provides:

"Annexation of fire districts—Ownership of assets of fire protection district—When less than sixty percent. If a portion of a fire protection district including less than sixty percent of the assessed value of the real property of the district is annexed to or incorporated into a city or town, the ownership of all assets of the district shall remain in the district and the district shall pay to the city or town within one year or within such period of time as the district continues to collect taxes in such incorporated or annexed areas, in cash, properties, or contracts for

the City of Normandy Park asked King County Fire Protection District 2 to pay 6.97 percent of the value of its assets to the City. The City's request was based on its calculation that Manhattan comprised 6.97 percent of the assessed valuation of all property within the fire protection district and also comprised more than 5 percent of the area within the Fire District. Therefore, the City determined that it was entitled to compensation from the Fire District under RCW 35.13.248. However, the Fire District refused to pay because it believed that less than 5 percent of the area of the Fire District was affected by the annexation, and therefore, no compensation was required under the statute. The Fire District's calculations showed that if Port of Seattle property was included in the Fire District's total area, then the area affected by annexation comprised only 3.94 percent of the property in the Fire District. On the other hand, if Port of Seattle property was not included in the Fire District's total area, then the area affected by annexation comprised 5.27 percent of the property in the Fire District.

The City subsequently brought a declaratory judgment action against the Fire District and the Port of Seattle and later moved for summary judgment. The trial court granted the motion and ruled in part as follows:

> 2.5) RCW 14.08.330 gives the Port exclusive police jurisdiction over its Sea–Tac Airport properties. RCW 14.08.120(2) gives the Port the right to provide fire protection services for its Sea–Tac Airport property or to contract for such services, which right is exercised by the Port. RCW 53.08.010 and RCW 14.08.030(2) give the

---

fire protection services, a percentage of the value of said assets equal to the percentage of the value of the real property in the entire district lying within the area so incorporated or annexed: *Provided,* That if less than five percent of the area of the district is affected, no payment shall be made to the city or town. The fire protection district shall provide fire protection to the incorporated or annexed area for such period as the district continues to collect taxes levied in such annexed or incorporated area."

The parties have not asked this court to interpret this statute, and they do not contest its application to these facts.

Port the power to condemn and acquire property. Nothing in Chapters RCW 52.04 and 52.22 pertaining to fire districts speaks to the issue of removal of the Port's airport property from a fire protection district. Read together, these statutes operate to remove the Port of Seattle property at Sea–Tac Airport from the territorial or other jurisdiction of King County Fire Protection District No. 2. The land area of "Manhattan" exceeds 5% of the area of King County Fire Protection District No. 2 and pursuant to RCW 35.13.248 more than 5% of the area of the District is affected.

2.6) Plaintiff's Motion for Summary Judgment is granted.

2.7) Defendant's Motion for Summary Judgment is denied.

The Fire District appeals from this order.

Issue: Did the trial court err in ruling that RCW 14.08 operates to remove the Port of Seattle property at Seattle–Tacoma airport from the territorial or other jurisdiction of the Fire District?

Appellant first contends that the trial court erred in its interpretation of RCW 14.08 because certain statutes contained in RCW 52.04 and 52.08 (formerly 52.22) contain the exclusive methods for removing real property from the jurisdiction of a fire district, and none of these statutes provide for removal of property by a municipal corporation's acquisition of real property for airport purposes. On the other hand, respondents argue that RCW 52.08.021[2] controls this case. The statute states:

Withdrawal by incorporation of part of district. The incorporation of any previously unincorporated land lying within a fire protection district shall operate to automatically withdraw such lands from the fire protection district.

According to respondents, the term "incorporation" clearly refers to the incorporation of any municipal corporation; and since the Port is a municipal corporation, RCW 53.04-.060, *Automobile Drivers Local 882 v. Department of*

---

[2]Former RCW 52.22.020 has been recodified as RCW 52.08.021.

*Retirement Sys.*, 92 Wn.2d 415, 419, 598 P.2d 379 (1979), *cert. denied*, 444 U.S. 1040 (1980), the condemnation and incorporation of the airport property by the Port automatically removed that property from the Fire District.

 Though the statute is ambiguous with respect to the meaning of "incorporation," a careful reading of RCW 52.08.021, the section immediately following 52.08.021, *i.e.*, 52.08.025, and the relevant legislative history indicates that "incorporation of any previously unincorporated land . . ." in RCW 52.08.021 refers to the "incorporation" of a city or town. The title of the act that created RCW 52.08.021 (formerly 52.22.020) states in pertinent part: "AN ACT relating to fire protection districts; providing for the exclusion of territory within the district upon incorporation of such territory *as a city or town* . . ." (Italics ours.) Laws of 1955, ch. 111, p. 522. It is well settled that where "the language of an act is ambiguous, the title may be resorted to as an aid to construction." *Bellevue v. Acrey*, 37 Wn. App. 57, 62, 678 P.2d 1289, *rev'd on other grounds*, 103 Wn.2d 203, 691 P.2d 957 (1984). The title quoted above establishes that the Legislature intended the word "incorporation," as used in RCW 52.08.021, to include only the incorporation of cities and towns, not the incorporation of port districts.

Respondents contend, however, that RCW 14.08.120 establishes, by implication, the Legislature's intent to remove municipal airport property from county fire district boundaries. RCW 14.08.120 states in pertinent part:

> Specific powers of municipalities operating airports. In addition to the general powers conferred in this chapter, and without limitation thereof, a municipality that has established or may hereafter establish airports, restricted landing areas, or other air navigation facilities, or that has acquired or set apart or may hereafter acquire or set apart real property for that purpose or purposes is authorized:
>
> . . .
>
> (2) To adopt and amend all needed rules, regulations, and ordinances for the management, government, and use of any properties under its control, whether within or

outside the territorial limits of the municipality; *to pro-vide fire protection for the airport,* including the acqui-sition and operation of fire protection equipment and facilities, and the right *to contract with any private body or political subdivision of the state for the furnishing of such fire protection;* to appoint airport guards or police, with full police powers; . . .

(Italics ours.) This statute clearly empowers a municipal corporation operating an airport to provide its own fire protection services. Though the statute does not expressly remove a municipal corporation's airport property from the territorial boundaries of a county fire district, respondent argues: (1) that as a practical matter, if the municipal cor-poration provides its own airport fire protection, there is no need for county fire protection and, therefore, the airport properties should be considered removed from the fire dis-trict; and (2) a careful reading of related statutes, including RCW 52.30.020 and 14.08.330, supports a conclusion that the Legislature intended to give municipal corporations exclusive police power jurisdiction over airport properties.

While there is logic to these arguments, the fact remains that none of the statutes cited by respondents pro-vides for removal of airport property from the territorial jurisdiction of a fire district. In fact, RCW 52.30.020 and RCW 14.08 arguably recognize that a municipal corporation such as the Port may be within the territorial jurisdiction of a fire district even though such municipal corporation provides its own fire protection and has not contracted with the fire district for fire protection. The anomalous result, of course, is that such a municipal corporation is part of the fire district territory, and yet it receives no fire protection services from the district. However, regardless of how pecu-liar this result may seem, appellant correctly points out that a similar situation once existed with respect to cities and towns.

As appellant notes, cities and towns historically had the power to operate their own fire departments even though they were part of a county fire district. However, in 1960,

by amendment of RCW Title 52, the Legislature specifically and expressly removed cities and towns *from the territorial boundaries* of the fire districts in which they were located. RCW 52.08.025 (formerly 52.22.030). Thus, it would appear that a municipal corporation is not removed from the *boundaries* of a fire district simply because it is empowered to create and use its own fire protection service. Rather, a municipal corporation is removed from the fire district boundaries only by express action of the Legislature.

Respondents, however, claim that such express legislative action is found in the portion of RCW 14.08.330 which states that airports shall "be under the exclusive jurisdiction and control of the municipality . . . controlling and operating it. . . . No other municipality . . . shall have any police jurisdiction of the same . . ." This argument is not persuasive. In *King Cy. v. Port of Seattle,* 37 Wn.2d 338, 223 P.2d 834 (1950), our Supreme Court held that the phrase "exclusive jurisdiction and control" only precludes other entities "from interfering with respect to the operation of the Seattle–Tacoma airport . . ." *King Cy. v. Port of Seattle, supra* at 348. In so holding, the court rejected the County's argument that the words "exclusive jurisdiction" effectively removed the airport from the territory of King County. It follows then that the court's interpretation of the language "exclusive jurisdiction and control" defeats respondents' argument in the instant case, *i.e.,* that the "exclusive jurisdiction" language in RCW 14.08 effectively removes the airport property from the Fire District. Respondents ask us to limit the scope of *King Cy. v. Port of Seattle, supra,* because the court there was faced with a constitutional restriction providing that no territory could be stricken from any county unless a majority of the voters residing in the affected territory had petitioned therefor. However, because the "exclusive jurisdiction" language did not have the effect of removing territory in *King Cy. v. Port of Seattle, supra,* there was no violation, and the constitutional provision did not in any way bear upon the scope or

definition of "exclusive jurisdiction." Therefore, *King Cy. v. Port of Seattle, supra,* is controlling here. The fact that the Port of Seattle has exclusive jurisdiction over its airport property does not automatically remove that property from the Fire District.

The same analysis is applicable to the language in the statute giving the airport exclusive "police jurisdiction." Again, this language, when read in the context of the rest of RCW 14.08.330, only speaks to *operational* jurisdiction, not *territorial* jurisdiction or boundaries. This analysis arguably gains support from a 1985 amendment to RCW 14.08-.330, which is underlined here:

> No other municipality in which the airport or air navigation facility is located shall have any police jurisdiction of the same or any authority to charge or exact any license fees or occupation taxes for the operations. However, by agreement with the municipality operating and controlling the airport or air navigation facility, a municipality in which an airport or air navigation facility is located may be responsible for the administration and enforcement of the uniform fire code, as adopted by that municipality under RCW 19.27.040, on that portion of any airport or air navigation facility located within its jurisdictional boundaries.

Amended by Laws of 1985, ch. 246, § 1.

This new language indicates that an airport's exclusive "police jurisdiction" does not remove the airport from the "jurisdictional *boundaries*" (italics ours) of other municipal corporations. Rather, it appears that exclusive "police *jurisdiction*" (italics ours) merely means that the airport is "responsible" for police operations at the airport, and no other municipality may interfere with those operations.

Thus, it is apparent that none of the relevant statutes discloses a legislative intent to remove airport property from the territory of county fire districts. It is also apparent that, in the past, the Legislature has expressed its intent to remove property from fire districts by passing additions or amendments to RCW 52.22 (such as those relating to cities and towns) which clearly and unequivocally remove such

property from the *territorial jurisdictions* of county fire districts. If the Legislature wishes to accomplish the result urged by respondent, it may clearly do so by enactment of legislation.

For the reasons indicated in our analysis, the airport property remains a part of King County Fire District 2. The judgment of the trial court is reversed.

SCHOLFIELD, C.J., and GROSSE, J., concur.

Review denied by Supreme Court July 8, 1986.